899 F.2d 1298
 16 Fed.R.Serv.3d 1205, 16 Fed.R.Serv.3d 181
 Marjorie DATSKOW, Executrix of the Estates of Robert C.
Gross and Susan C. Gross, deceased, and Administratrix of
the Estates of Michael and David Gross, deceased, and
Grossair, Inc., Plaintiffs-Appellants,
v.
TELEDYNE, INC., CONTINENTAL PRODUCTS DIVISION, Defendant-Appellee.
 No. 622, Docket 89-7916.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 10, 1990.
Decided March 23, 1990.
Opinion on Denial of Rehearing May 2, 1990.
 
 Arthur Alan Wolk, Philadelphia, Pa. (Catherine B. Slavin, Wolk, Genter & Harrington, Philadelphia, Pa., Anthony J. Adams, Jr., Michael Townsend, Davidson, Fink, Cook & Gates, Rochester, N.Y., on the brief), for plaintiffs-appellants.
 Stephen R. Stegich III, Rochester, N.Y. (George G. Mackey, Robert W. Ludwig, Jr., Mackey & DiMarco, Rochester, N.Y.; Condon & Forsyth, New York City, on the brief), for defendant-appellee.
 Before MESKILL and NEWMAN, Circuit Judges, and POLLACK, Senior District Judge.*
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal of a diversity case raises a host of issues concerning personal jurisdiction, service of process, the statute of limitations, and the identification of a party defendant. The issues arise on an appeal by Marjorie Datskow, as executrix and administratrix, and Grossair, Inc. from the August 9, 1989, judgment of the District Court for the Western District of New York (David G. Larimer, Judge) dismissing for lack of personal jurisdiction and insufficiency of service of process their complaint against a defendant identified as "Teledyne, Inc., Continental Products Division." The suit sought damages for the manufacture of an aircraft engine that allegedly failed, causing the crash of a single-engine plane and the death of plaintiff Datskow's decedents. We conclude that the plaintiffs sufficiently made clear their intention to sue the manufacturer of the engine, Teledyne Industries, Inc., that this defendant is amenable to the jurisdiction of the Western District, that this defendant sufficiently participated in proceedings in the Western District to have waived lack of personal service of process, and that the action is timely as to this defendant. We therefore reverse and remand.
 
 Background
 
 2
 The complaint alleges that on November 26, 1986, a Beechcraft Debonair single-engine plane crashed while approaching the airport at Winston-Salem, North Carolina, killing all persons aboard the plane. Among the dead were Robert C. Gross, his wife, and their two children. The plane was owned by Grossair, Inc., a New York corporation. Suit was brought by Marjorie Datskow, a Pennsylvania citizen, as executrix and administratrix of the decedents' estates, and by Grossair, Inc. The caption identified the defendant as "Teledyne, Inc. Continental Motors Division" located at "Box 90, Mobile, Alabama 36601." It is undisputed that there is located in Mobile, Alabama, an aircraft engine manufacturing plant operated under the name "Teledyne Continental Motors Aircraft Products, a Division of Teledyne Industries, Inc." This division will be referred to as "TCM." Teledyne Industries, Inc., a California corporation, is a wholly-owned subsidiary of Teledyne, Inc. The latter is a holding company with 39 subsidiaries, most of which use the name "Teledyne" in their corporate names. The mailing address of TCM is Box 90, Mobile, Alabama 36601. Appellee acknowledges that the engine on the ill-fated plane was rebuilt by TCM.
 
 
 3
 The complaint alleged causes of action for negligence, strict product liability, fraud, and breach of warranty. The executrix made claims under New York's survival and wrongful death statutes. See N.Y. Est. Powers & Trusts Law Secs. 5-4.1 to 5-4.6, 11-3.2 (McKinney 1981 & Supp.1989). In New York, the limitations period for a wrongful death action is two years, N.Y. Est. Powers & Trusts Law Sec. 5-4.1(1) (McKinney Supp.1989); for a survival action, it is three years, N.Y.Civ.Prac.L. & R. Sec. 214 (McKinney Supp.1989).
 
 
 4
 The complaint was filed in the District Court on November 22, 1988, just four days short of a two-year interval from the plane crash. On December 1, 1988, plaintiffs mailed a copy of the complaint and summons to the defendant, as identified in the caption, by certified mail, return receipt requested. A receipt was returned, acknowledging receipt on December 5, 1988. On December 23, 1988, Teledyne, Inc., filed an answer, alleging numerous affirmative defenses including lack of personal jurisdiction, lack of proper service, and expiration of applicable statutes of limitations. On January 17, 1989, counsel for plaintiffs and for Teledyne, Inc. attended a conference with a magistrate at which scheduling of discovery and motions was discussed. Plaintiffs contend that some settlement discussions also occurred. No mention was made at the conference that TCM was in fact a division of Teledyne Industries, Inc. rather than Teledyne, Inc. or that either corporation had not received proper service of the complaint.
 
 
 5
 On April 21, 1989, defendant moved to dismiss on grounds of lack of personal jurisdiction, lack of proper service, and statute of limitations. Plaintiffs cross-moved for leave to amend the complaint to change the identification of the defendant to "Teledyne Continental Motors Aircraft Products, a Division of Teledyne Industries, Inc." The District Court granted the defendant's motion and denied the cross-motion. The Court essentially accepted the defendant's contention that plaintiffs had sued the wrong corporation, the holding company, Teledyne, Inc., instead of the subsidiary, Teledyne Industries, Inc. Based on this premise, the Court first ruled that Teledyne, Inc. was not amenable to the personal jurisdiction of the Western District under New York's long-arm provisions because this corporation was not doing business within New York, N.Y.Civ.Prac.L. & R. Sec. 301 (McKinney 1972), and had not committed a tort outside New York causing injury to persons or property within the State, id. Sec. 302(a)(3). The Court then ruled that Teledyne, Inc. had not been properly served because mail service is ineffective beyond the territorial limits of the state in which the district court sits.
 
 
 6
 The Court also upheld the statute of limitations defense as to the wrongful death action. Judge Larimer acknowledged that applicable New York law extends the normal statute of limitations for 60 days under certain circumstances. See N.Y.Civ.Prac.L. & R. Sec. 203(b)(5) (McKinney Supp.1990). The literal terms of section 203(b)(5) require delivery of the summons to the sheriff of a county outside New York City in which the defendant resides or is doing business and service of the summons upon the defendant within 60 days after the expiration of the normal limitations period. The District Judge ruled that the statute was applicable to federal diversity suits and that filing with the appropriate district court clerk is equivalent to filing with the sheriff of the appropriate county. Nevertheless, he concluded, since Teledyne, Inc. was neither resident nor doing business in New York and since Teledyne, Inc. had not been properly served within the 60-day extension period, the two-year limitations period applicable to the wrongful death claim had not been tolled.
 
 
 7
 Judge Larimer rejected plaintiff's argument that defendant had waived its defenses. He noted that the defenses had been asserted in the answer and presented by motion within six months of the filing of the complaint. Finally, the Judge denied plaintiffs' motion to redesignate the defendant because neither Teledyne, Inc. nor Teledyne Industries, Inc. had been served within the limitations period. Judgment was entered dismissing the complaint.
 
 Discussion
 
 8
 Judge Larimer was not insensitive to the predicament of the plaintiffs and the severity of the result that he reached. But he felt obliged to reach it as a court of limited jurisdiction, noting that the plaintiffs had waited until four days before the end of the limitations period to initiate the suit and then had not commenced it properly. We share the Judge's assessment of plaintiffs' deficiencies but reach a different result because we believe that plaintiffs did not select the wrong defendant but committed the lesser sin of mislabeling the right defendant and that the defendant's conduct, in the circumstances of this case, precludes it from complaining about the absence of personal service.
 
 
 9
 Plaintiffs identified the defendant in several ways. First, they made clear that the entity they wished to sue was the manufacturer of the engine in the plane that crashed. Appellee acknowledges that this engine was rebuilt by TCM, a division of Teledyne Industries, Inc. Second, they listed in the caption of the complaint the mailing address of the entity they wished to sue. There is no dispute that Box 90, Mobile, Alabama 36601, is the address of TCM, a division of Teledyne Industries, Inc. Third, they approximated the name of the entity they wished to sue in the caption of the complaint. The caption names "Teledyne, Inc. Continental Motors Division," and the correct name is "Teledyne Industries, Inc., Teledyne Continental Motors Aircraft Products Division." All of the words in plaintiffs' designation appear in the correct designation. The key difference, of course, is that plaintiffs identified the corporate entity as "Teledyne, Inc.," whereas the correct name of the corporate defendant is "Teledyne Industries, Inc."
 
 
 10
 Our first question is whether the plaintiffs named the wrong defendant or mislabeled the right defendant. In some circumstances, the identification of a defendant by the name of one corporation cannot fairly be regarded as a mislabeling of a different corporation intended to be sued. But the line between naming the wrong defendant and mislabeling the right one must be drawn in light of the context of the nomenclature created by the defendant and the labeling undertaken by the plaintiffs assessed against that context. Teledyne Industries, Inc. has chosen to do business with a name that uses the key word of its parent's name. It is part of a family of affiliated companies, most of which use the name "Teledyne" in their corporate name. In New York State, it operates several divisions, all of which use the name "Teledyne" in their division name. In Mobile, Alabama, the location of the plant that rebuilt the engine at issue in this case, Teledyne Industries, Inc. creates confusion as to its correct corporate name by maintaining a telephone listing under the designation "Teledyne--Teledyne Continental Motors Aircraft Products." At the site of its aircraft engine division, Teledyne Industries, Inc. leads the public to believe that the division's corporate name is just "Teledyne," the designation that plaintiffs used in their complaint.
 
 
 11
 The circumstances of this case may usefully be contrasted with those in Schiavone v. Fortune, aka Time, Inc., 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). The complaint there identified the defendant as "Fortune." The intended defendant was Time, Inc. The complaint alleged libel in an article in Fortune magazine, and the issue containing the article had listed the correct corporate name of the publisher, Time, Inc. A majority of the Court concluded that an amendment to identify the defendant as Time, Inc. was properly to be viewed as bringing in a new party. Unlike Schiavone, in our case the name in the caption approximates the correct name of the defendant, the correct name is not readily identifiable, and the defendant has taken the risk of incorrect identification by conducting business under a name easily confused with those of its parent and its affiliated companies and divisions. Even on the quite different facts of Schiavone, it is significant that three members of the Supreme Court thought that the right defendant had been sued, but merely incorrectly named. Id. at 35-36, 106 S.Ct. at 2387-88 (Stevens, J., with whom Burger, C.J., and White, J., join, dissenting).
 
 
 12
 We conclude that plaintiffs' complaint sufficiently alerted Teledyne Industries, Inc. that it was the corporation being sued so that this case may be categorized as one of mislabeling. We therefore turn to the issues of personal jurisdiction, service of process, and statute of limitations, which Judge Larimer decided upon a contrary premise.
 
 
 13
 Though the parties dispute whether Teledyne, Inc. does business within New York, there appears to be no dispute that Teledyne Industries, Inc. does business in that State, where it operates several divisions. Teledyne Industries, Inc. is amenable to personal jurisdiction under section 301.
 
 
 14
 Service of process is more troublesome. The parties agree that the proper method of serving process in a diversity case is to be determined by federal law, Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), but they disagree as to what federal law provides. Plaintiffs contend that service of the complaint by certified mail was authorized by Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. Defendant replies that Rule 4(f) limits mail service under Rule 4(c) to the territorial limits of the state in which the district court is located, and that Rule 4(e), permitting out-of-state service pursuant to state law, is unavailable because New York law did not permit mail service on foreign corporations until January 1, 1990. See N.Y.Civ.Prac.L. & R. Sec. 312-a (McKinney Supp.1990).
 
 
 15
 This Court has not previously considered whether the territorial limits of Rule 4(f) apply to the mail service authorized by Rule 4(c). However, numerous district courts have ruled that Rule 4(f) limits the scope of Rule 4(c) mail service. See Thermo-Cell Southeast, Inc. v. Technetic Industries, Inc., 605 F.Supp. 1122 (N.D.Ga.1985); Olympus Corp. v. Dealer Sales & Service, Inc., 107 F.R.D. 300 (E.D.N.Y.1985); Reno Distributors, Inc. v. West Texas Oil Field Equipment, Inc., 105 F.R.D. 511 (D.Kan.1985); Daley v. ALIA, 105 F.R.D. 87 (E.D.N.Y.1985); William B. May Co., Inc. v. Hyatt, 98 F.R.D. 569 (S.D.N.Y.1983); cf. Davis v. Musler, 713 F.2d 907 (2d Cir.1983) (Rule 4(f) limits scope of Rule 4(d)). But see Boggs v. Darr, 103 F.R.D. 526 (D.Kan.1984). This view is correct. There is no basis for believing that the adoption of mail service in 1983 was intended to permit disregard of Rule 4(f). The Advisory Committee on Civil Rules is currently seeking comment on a proposal to permit nationwide mail service for federal question cases, but the proposal would not permit personal jurisdiction to be obtained upon an out-of-state defendant by mail service in a diversity case, unless authorized by state law. Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, Rule 4l (2), 127 F.R.D. 266-84 (1989).
 
 
 16
 Though plaintiffs' mailing of the summons and complaint provided notice to defendant, it did not constitute proper service that permits the exercise of personal jurisdiction. Plaintiffs contend, nevertheless, that defendant waived proper service by participating in the litigation without questioning personal jurisdiction during the period prior to expiration of the statute of limitations. A delay in challenging personal jurisdiction by motion to dismiss has resulted in waiver, even where, as here, the defense was asserted in a timely answer; see Burton v. Northern Dutchess Hospital, 106 F.R.D. 477 (S.D.N.Y.1985); Vozeh v. Good Samaritan Hospital, 84 F.R.D. 143 (S.D.N.Y.1979). The delays in Burton and Vozeh, however, were far longer than the few months in this case.
 
 
 17
 Nevertheless, under all the circumstances, we conclude that defendant's conduct bars it from complaining about the defective form of service. Defendant attended the conference with the magistrate and participated in scheduling discovery and motion practice. Nothing was said about defective service of process. As we hold, infra, the limitations period on the wrongful death claims had not yet run at the time of this conference, and it would have been simple for plaintiffs to have made personal service on the defendant if the point had been mentioned. In fact, since Teledyne Industries, Inc. has operating divisions in New York, it probably would have been possible to serve the corporation by mail by sending the complaint to an agent at one of these divisions. Moreover, this is not a case where a defendant is contesting personal jurisdiction on the ground that longarm jurisdiction is not available. We would be slower to find waiver by a defendant wishing to contest whether it was obliged to defend in a distant court. But here amenability of Teledyne Industries, Inc. to the jurisdiction of the Western District is clear, and defendant is complaining only about a defect in the form of service, one that could have been readily cured during the limitations period if defendant had promptly complained.
 
 
 18
 The final issue is whether the wrongful death claims are time-barred. Plaintiffs rely on the 60-day extension provision of N.Y.Civ.Prac.L. & R. Sec. 203(b)(5). We have previously ruled that section 203(b)(5) is available to a plaintiff in a federal diversity suit. See Personis v. Oiler, 889 F.2d 424 (2d Cir.1989). That decision, however, decided only that a federal diversity plaintiff may use section 203(b)(5) by complying literally with its terms, i.e., by delivering the summons to a sheriff of the county in which the defendant resides or is doing business, if outside New York City, or the clerk of the appropriate county, if within New York City, and then making service within 60 days of the expiration of the normal limitations period. This case poses three further questions. May the federal diversity plaintiff deliver the summons to the federal counterpart of the designated state officials, i.e., the federal marshal instead of the county sheriff, or the district court clerk instead of the county clerk? If so, may delivery be made to a district court clerk outside of New York City? If so, may the required personal service of summons be waived by the defendant under the same circumstances that waiver occurs for purposes of personal jurisdiction?
 
 
 19
 In Personis v. Oiler, supra, the summons in that federal suit had been delivered to a county sheriff, thereby literally complying with the state statute. We therefore did not reach the issue now posed as to whether delivery may be made to federal counterparts of the designated state officials. Id. at 427. Several district courts have stated that federal court plaintiffs may deliver a summons to the federal counterparts of the state officials designated in section 203(b)(5). See Levy v. Pyramid Co. of Ithaca, 687 F.Supp. 48, 53 (N.D.N.Y.1988), aff'd without consideration of this point, 871 F.2d 9 (2d Cir.1989); Gold v. Jeep Corp., 579 F.Supp. 256, 258 (E.D.N.Y.1984); Aro v. Lichtig, 537 F.Supp. 599, 600 (E.D.N.Y.1982); Florence v. Krasucki, 533 F.Supp. 1047, 1050-51 (W.D.N.Y.1982); Phoenix Mutual Life Insurance Co. v. Cervera, 524 F.Supp. 70, 72-73 (E.D.N.Y.1981); Somas v. Great American Insurance Co., 501 F.Supp. 96, 97 (S.D.N.Y.1980); Zarcone v. Condie, 62 F.R.D. 563, 568 (S.D.N.Y.1974); Bratel v. Kutsher's Country Club, 61 F.R.D. 501, 502 (S.D.N.Y.1973); Myers v. Slotkin, 13 F.R.D. 191, 194 (E.D.N.Y.1952); Nola Electric Co. v. Reilly, 93 F.Supp. 164, 170 (S.D.N.Y.1949).
 
 
 20
 We agree with the rationale of these decisions. Service of process must be timely made when a state statute of limitations specifies that service is necessary to toll a limitations period, Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), but federal law may determine whether service has been made, Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Thus, in Morse v. Elmira Country Club, 752 F.2d 35 (2d Cir.1984), we recognized that service was required to toll the state statute of limitations, but we applied the federal rules, and did so generously, in finding that service had been made. Section 203(b)(5) affords an extra 60 days beyond the normal limitations period when a summons is delivered to a designated state official within the normal limitations period and the summons is served within the 60-day period. The delivery requirement is not precisely an aspect of the method of service, which would be governed by federal law, nor is its precise method of accomplishment so integral a part of the state's tolling requirement as to require literal compliance with state law. The statute seeks to assure that within the normal limitations period the summons is delivered to an official who can be relied upon to make an official record of its receipt, thereby avoiding disputes as to timeliness of delivery. Permitting federal counterparts to serve this function does not impair any state interest in establishing limitations on the time for suit.
 
 
 21
 Judge Ryan made the point forcefully in the first of the line of district court decisions cited above:
 
 
 22
 There is no requirement that a litigant in an action pending in federal court call upon the services of a state official to either protect, enforce or enjoy the privileges granted to him by local law. The test to be applied under the rationale of Erie R. Co. v. Tompkins, [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),] is whether the litigant is receiving the same treatment that he would have in a state court, and this does not prevent a federal court from administering the state system of law in its own way in connection with "details related to its own conduct of business."
 
 
 23
 Nola Electric Co. v. Reilly, 93 F.Supp. at 170 (quoting Cohen v. Beneficial Loan Corp., 337 U.S. 541, 555, 69 S.Ct. 1221, 1229-30, 93 L.Ed. 1528 (1949)).
 
 
 24
 The further question, however, is whether the federal court clerk may serve as the counterpart, not of the relevant county clerk, but of the relevant county sheriff. Had this suit been filed in state court, the plaintiffs would have been obliged to deliver the summons to the county sheriff, the designated official when the relevant county is outside New York City. Then-District Judge Altimari faced this problem in Gold v. Jeep Corp., 579 F.Supp. 256 (E.D.N.Y.1984), where the summons was also delivered to the district court clerk and the relevant county was outside New York City. Sensibly relying on Judge Ryan's rationale in Nola Electric, Judge Altimari found the delivery to be sufficient compliance with section 203(b)(5):
 
 
 25
 What particular individual or official shall be authorized to serve as the depository for receipt of the summons is ... a detail [that] "does not affect substantial rights."
 
 
 26
 Id. at 258-59. Judge Altimari was concerned that a contrary result would create two separate rules within the Eastern District, one for cases within New York City and another for cases outside New York City. Though requiring delivery to the United States Marshal throughout the Western District would achieve a uniform rule, we agree with Judge Altimari that the clerk of a district court may serve as the depository for a summons, whether the relevant county is within or without New York City.
 
 
 27
 The final question is whether the requirement of personal service may be waived, once timely deposit has occurred. As we noted with respect to appellee's challenge to personal jurisdiction, the appellee received notice of the lawsuit within the 60-day period and within that period participated in the lawsuit. The same circumstances that sufficed to constitute a waiver of service for purposes of personal jurisdiction also waive service for purposes of strict compliance with section 203(b)(5).
 
 
 28
 The plaintiffs have needlessly made several missteps in initiating their lawsuit. But part of their problem was created by the preference of the Teledyne family of companies to operate under confusingly similar names. The plaintiffs have made it sufficiently clear that they wish to sue the company whose division rebuilt the engine alleged to have caused the fatal accident. They deposited the complaint with the district court clerk within the normal limitations period and gave notice of the complaint to the Continental Products Division, sufficient to cause a Teledyne lawyer to participate in the litigation, within the 60-day period of section 203(b)(5). Under all the circumstances, we conclude that the plaintiffs are timely proceeding against the right defendant.
 
 
 29
 Accordingly, the judgment is reversed and the cause remanded for further proceedings, including allowing the plaintiffs to amend the complaint to designate properly the name of the defendant, Teledyne Industries, Inc.
 
 PER CURIAM:
 
 30
 Appellee petitions for rehearing, contending that our decision of March 23, 1990, improperly permitted amendment of the complaint contrary to the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. As appellee points out, that Rule applies to amendments that seek not only to bring in a party not previously named but also "to correct a misnomer or misdescription of a defendant," Fed. R. Civ. P. 15(c) advisory committee's note. See Ingram v. Kumar, 585 F.2d 566, 570 (2d cir. 1978). cert. denied, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). Rule 15(c) permits relation back where, within the limitations period, the party sought to be brought in or the party whose name is sought to be corrected received notice of the institution of the action and knew or should have known that it was the party being sued.
 
 
 31
 In this case, Teledyne Industries, Inc. acknowledged receipt of notice of the complaint no later than December 5, 1988. Though that notice was not accomplished by proper service, there is no requirement that the "notice" required by Rule 15(c) meet the formalities of service. The Advisory Committee explicitly stated that the notice required by Rule 15(c) "need not be formal." And there can be no doubt that Teledyne Industries, Inc. knew from the complaint that it was the party being sued.
 
 
 32
 Nevertheless, appellee contends that the notice it received arrived beyond the relevant two-year statute of limitations. But New York extends its normal limitations period for 60 days under certain circumstances, see N.Y. Civ. Prac. L. & R. Sec. 203(b)(5) (McKinney Supp. 1990), and we concluded in our original decision that those circumstances applied to this case. There is no dispute that Teledyne Industries, Inc. recieved notice within the 60-day extension period.
 
 
 33
 Finally, appellee contends that reliance on the 60-day extension period to validate the notice is precluded by Schiavone v. Fortune, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). We disagree. Schiavone rejected the timeliness of notice, alleged to satisfy Rule 15(c), that was received after the expiration of a state's limitation period but within the 120-day time for service of process permitted by Rule 4(j). 477 U.S. at 30, 106 S.Ct. at 2384. Timeliness of such notice had previously been upheld by this Court, see Ingram v. Kumar, 585 F.2d at 571-72, but that point was not accepted by Schiavone, as we subsequently recognized in Unger v. Caloric Corp. (In re All Brand Appliance & Television Co.), 875 F.2d 1021, 1024-25 (2d Cir. 1989). In the pending case, however, plaintiffs are not seeking to use Rule 4(j)'s 120-day time period for service to validate their Rule 15(c) notice to Teledyne Industries; they are relying on the 60-day extension period that New York adds to its own limitations period. In this respect, our case differs from Ingram, where notice to the correctly identified defendant was not given until well after the 60-day period provided by section 203(b)(5). The notice here satisfies Rule 15(c), and the amendment will relate back to the date of the original complaint.
 
 
 34
 The petition for rehearing is denied.
 
 
 
 *
 The Honorable Milton Pollack of the District Court for the Southern District of New York, sitting by designation