Antonio MARENO, Jr.,
Plaintiff–Appellant,

v.

Thomas ROWE and Jet Aviation of America, Inc.,
Defendants–Appellees.

No. 1255, Docket 90–7003.

United States Court of Appeals,
Second Circuit.

Argued June 7, 1990.
Decided Aug. 6, 1990.

Antonio Mareno, Sr., Yorktown Heights, N.Y., for plaintiff-appellant.

Stanley L. Goodman, Roseland, N.J. (James Beach, Grotta, Glassman & Hoffman, of counsel), for defendants-appellees.

Before VAN GRAAFEILAND, MINER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Antonio Mareno, Jr. appeals from a judgment entered in the United States District Court for the Southern District of New York (Broderick, *Judge*) dismissing his complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and imposing a $4,800 sanction pursuant to Federal Rule of Civil Procedure 11. On this appeal, Mareno complains that the district court incorrectly held that defendants-appellees Jet Aviation of America, Inc. ("JAA") and Thomas Rowe were not amenable to suit under either New York's corporate presence doctrine or New York's long arm jurisdiction statute. *See* N.Y.Civ.Prac.L. & R. §§ 301, 302(a)(3) (McKinney 1990). Mareno also argues that the district court's imposition of a $4,800 sanction was improper.

For the reasons stated below, we affirm the district court's dismissal of Mareno's complaint and reverse the sanction.

## BACKGROUND

This appeal arises from an action filed by Mareno in the United States District Court for the Southern District of New York claiming that he was wrongfully discharged from his job with JAA in violation of his civil rights under 42 U.S.C. §§ 1981 *et seq.* and 42 U.S.C. §§ 2000a *et seq.* The complaint alleged that defendant-appellee Rowe, one of Mareno's supervisors, acted in concert with another supervisor to discharge Mareno on the basis of false accusations of dereliction in the performance of his employment duties. While the complaint named JAA as the corporate defendant, Mareno actually was employed by JAA's corporate sibling, Jet Aviation of Teterboro, Inc. ("JTEB").

The relationship of these corporations is complex. JAA, a Delaware corporation, and JTEB, a Maryland corporation, conduct fixed base operations ("FBOs") at various airports throughout the country. The FBOs provide maintenance service for aircraft. JAA operates FBOs at several airports throughout the United States, none of which is located in New York. JTEB operates a single FBO at the airport in Teterboro, New Jersey, where Mareno was employed as a line service technician. JTEB and JAA are wholly-owned subsidiaries of Jet Aviation Holdings, Inc. ("JHDG"), a Delaware corporation. JHDG also owns a third subsidiary, Executive Air Fleet ("EAF"), a Delaware corporation. EAF manages private corporate aircraft, providing flight and administrative personnel at various airfields throughout the United States, including the White Plains, New York, Airport. Maintenance of the aircraft managed by EAF is performed by contractors selected through a competitive bidding process, with most of the work being performed by Butler Aviation, a competitor of JAA and JTEB. EAF does not conduct FBOs at any location. Affidavits submitted by the defendants clearly establish that the various subsidiaries of JHDG are wholly separate from each other, maintaining their own corporate books, employees, assets, and business operations.

Following service of Mareno's complaint, an answer was interposed by JTEB on behalf of itself and Rowe. It noted that the complaint "incorrectly referred to [JTEB] as 'Jet Aviation of America, Inc.'" Mareno's request for a notation of default for the failure of JAA to file a responsive pleading was denied by the district court. Defendants moved to dismiss the complaint for, *inter alia,* lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendants also moved for sanctions under Federal Rule of Civil Procedure 11, arguing that Mareno's claim of jurisdiction, in the complaint and in his opposition to defendants' motion to dismiss, was without basis in law or fact. The district court granted defendants' motion to dismiss and imposed sanctions against Mareno and his attorney in the amount of $4,800.

## DISCUSSION

█ As a preliminary matter, Mareno contends that the answer interposed by JTEB on behalf of JAA is improper because JTEB was not a party named in his complaint. Although Mareno may be technically correct, pleadings are to be construed liberally so "as to do substantial justice." Fed.R.Civ.P. 8(f); *see Friedlander v. Cimino,* 520 F.2d 318, 320 (2d Cir. 1975) (per curiam). The answer was obviously intended to notify, and in point of fact did notify, Mareno and the court that JTEB was the real employer and the proper defendant. Further, the answer was filed on behalf of the party that Mareno evidently intended to sue and adequately responded to the allegations contained in the complaint. *See Datskow v. Teledyne, Inc.,* 899 F.2d 1298, 1301–02 (2d Cir.1990); *Boring v. Kozakiewicz,* 833 F.2d 468, 470–71 (3d Cir. 1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). Therefore, the district court properly denied Mareno's request for a notation of default against JAA.

Turning to the principal basis for this appeal, Mareno argues that the district court improperly dismissed his complaint for lack of personal jurisdiction over the defendants. Where the underlying action is based on a federal statute, we are to apply state personal jurisdiction rules if the federal statute does not specifically provide for national service of process. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987); *accord Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir.1989). In this case, Mareno argues that the defendants are amenable to suit under New York's corporate presence doctrine and under its long arm statute. *See* N.Y.Civ.Prac.L. & R. §§ 301, 302(a)(3). We disagree.

Under section 301, an entity is amenable to jurisdiction in New York if it is "doing business" in New York so as to establish its presence in the state. *Ball v. Metallurgie Hoboken—Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.1990); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985). A foreign corporation is said to be "doing business" in New York if it engages in a continuous and systematic course of conduct in New York. *Laufer v. Ostrow*, 55 N.Y.2d 305, 309–10, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982); *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 227 N.E.2d 851, 853, 281 N.Y.S.2d 41, 43, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Neither JTEB nor JAA solicits business, has offices, holds bank accounts or property, or employs individuals in New York; thus, none of the factors indicative of presence have been demonstrated. *See Hoffritz*, 763 F.2d at 58.

Equally unavailing is Mareno's argument that EAF's presence in New York is a predicate for the exercise of jurisdiction over the corporate defendant. EAF exists as a discrete corporate entity and performs a business function wholly unrelated to the operation of FBOs. In light of the tenuous connection between EAF and its corporate siblings, it stretches the imagination to argue that EAF acts as an agent or department of JAA or JTEB. *See Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 432, 278 N.E.2d 895, 897, 328 N.Y.S.2d 653, 657 (1972); *Frummer*, 19 N.Y.2d at 537, 227 N.E.2d at 853–54, 281 N.Y.S.2d at 44. Accordingly, there is no basis to attribute EAF's New York contacts to its corporate siblings.

Mareno further contends that the court may exercise jurisdiction over the corporate defendant under section 302(a)(3) of New York's long arm statute. Again, we disagree. Section 302(a)(3) requires that a plaintiff demonstrate, *inter alia*, that the defendant "committ[ed] a tortious act without the state causing injury to person or property within the state." To satisfy this requirement Mareno argues that he was injured within the state by virtue of the fact that he has suffered financial loss in New York. An injury, however, does not occur within the state simply because the plaintiff is a resident. "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Carte v. Parkoff*, 152 A.D.2d 615, 616, 543 N.Y.S.2d 718, 719 (2d Dep't 1989) (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2d Dep't 1987)). Thus, despite the fact that Mareno may suffer the economic consequences of his firing in New York, the location of the original event which caused the injury is New Jersey. Undoubtedly, the exercise of personal jurisdiction must be based on a more direct injury within the state and a closer expectation of consequences within the state than the type of indirect financial loss alleged by Mareno. *See Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326–27, 402 N.E.2d 122, 126, 425 N.Y.S.2d 783, 787 (1980); *see also American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir.1971).

Similarly, defendant Rowe, a New Jersey resident, who conducts no business in New York, is amenable to suit only if his activities fall within New York's long arm statute. Once again, Mareno invokes sec-

tion 302(a)(3) but fails to establish that Rowe's activities as a supervisor of JTEB in New Jersey resulted in a direct injury to Mareno in New York. *See Fantis Food*, 49 N.Y.2d at 326–27, 402 N.E.2d at 126, 425 N.Y.S.2d at 787. Thus, as with the corporate defendant, the district court properly granted the motion to dismiss for lack of personal jurisdiction.

█ Finally, Mareno challenges the district court's imposition of sanctions under Federal Rule of Civil Procedure 11. Until today, we reviewed whether a party's legal argumentation is "frivolous" within the meaning of Rule 11 under a *de novo* standard. *See, e.g., Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir.1990); *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21–22 (2d Cir.1990) (discussing three-tiered standard of Rule 11 review). However, the Supreme Court in *Cooter & Gell v. Hartmarx, Corp.*, — U.S. ——, ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990), held that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." Of course, the Court recognized that legal errors on the part of the district court will constitute an abuse of discretion. *Id.* at ——–——, 110 S.Ct. at 2460–61. Our review of the district court's decision to impose sanctions in the present case is in accordance with the deferential standard mandated by *Cooter & Gell*.

█ There is no doubt that the arguments presented by Mareno were not persuasive. Nevertheless, to constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands. *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). Thus, not all unsuccessful legal arguments are frivolous or warrant sanction. *Cf. Securities Indus. Ass'n*, 898 F.2d at 321–22; *McMahon*, 896 F.2d at 22; *Motown Prod., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir.1988) (per curiam). The positions advanced by Mareno and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against. *See* Fed.R.Civ.P. 11 Advisory Committee Note to 1983 Amendment; *see also Securities Indus. Ass'n*, 898 F.2d at 322; *Motown Prod.*, 849 F.2d at 785; *McMahon*, 896 F.2d at 22. Simply put, we believe that the award of a $4,800 sanction was inappropriate in this case and failed to recognize the complexities of New York's long arm jurisprudence.

█ We also deny appellees' request that appellate sanctions be imposed upon Mareno. *See* Fed.R.App.P. 38; *see also Cooter & Gell*, — U.S. at ——, 110 S.Ct. at 2461. Mareno has not demonstrated the vexatious tactics or manifest bad faith that usually prompts the imposition of appellate sanctions. *See Rodriguez, Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 317–18 (2d Cir.1990); *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir.1986).

## CONCLUSION

For the reasons set forth above, the judgment of the district court dismissing Mareno's complaint is affirmed and that part of the judgment imposing the Rule 11 sanction against Mareno and his attorney is reversed. Accordingly, the case is remanded to district court for modification of the judgment consistent with this opinion.

VAN GRAAFEILAND, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that the district court did not err in dismissing the complaint. I disagree with my colleagues' decision to reverse the imposition of sanctions. An explanation of why I dissent on the sanctions issue requires that I elaborate briefly on both the facts and the law.

From November 29, 1988 until he was discharged on January 12, 1989, Antonio Mareno, Jr. (hereinafter "plaintiff") was employed by Jet Aviation of Teterboro, Inc. Five days after plaintiff's discharge, his

attorney, without so much as a prior nod in the direction of the EEOC, brought this action in the Southern District of New York seeking $1.5 million in damages. Before plaintiff's attorney hastened so precipitately into court, he was bound to make reasonable inquiry to ascertain that the complaint which he prepared and signed was "well grounded in fact." Fed.R.Civ.P. 11. My colleagues correctly identify plaintiff's employer as Jet Aviation of Teterboro, Inc. They neglect to state, however, that, if plaintiff's attorney had made reasonable inquiry as required by Rule 11, he easily would have ascertained this to be the fact. On November 28, 1988 plaintiff executed "AN EMPLOYEE NON–DISCLO-SURE AGREEMENT" which identified "Jet Aviation/Teterboro, Inc. ('the Company'), a Delaware corporation having its principal place of business at Teterboro Airport, Teterboro, New Jersey" as plaintiff's employer. Over the Rule 11 certification of plaintiff's attorney, the complaint, with no reference whatever to Jet Aviation of Teterboro, Inc., alleges that "between November 29, 1988, and January 12, 1989, [plaintiff] was employed by defendant Jet Aviation of America, Inc." This was an obvious and inexcusable mistatement of fact.

The balance of plaintiff's complaint demonstrates a complete disregard of the requirements of Fed.R.Civ.P. 8. Pursuant to that Rule, the complaint was required to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." The complaint states that plaintiff resides in New York's Westchester County and that his employment was in New Jersey. It alleges that Jet Aviation of America, Inc. is a Massachusetts corporation which operates a business at Teterboro Airport in New Jersey, where plaintiff was employed, and that the defendant Rowe [no residence specified but actually a New Jersey resident] was employed by Jet Aviation of America, Inc. at the Teterboro Airport. There is not a single allegation in the complaint that justifies suit in the Southern District of New York. I agree with my colleagues that the district court had no personal jurisdiction over the defendants.

However, I would go a step further and hold that the complaint does not even state grounds upon which a claim of jurisdiction could be based.

Rule 8 also requires that the complaint contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The philosophy underlying this Rule is plainly applicable to the instant case. "If a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights." *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988). Plaintiff's complaint alleges that he was summarily discharged on the erroneous ground that he had improperly stored a jet plane too close to another plane so that both planes were damaged and that as a result he was deprived of his civil rights. This does not state a civil rights violation, and there are no other factual allegations in the complaint that do. As it stands, the complaint is fatally defective and this fact alone would warrant sanctions. *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

Finally, I deem it significant that plaintiff's attorney rejected the defendants' laudable attempts to remedy the attorney's shoddy practices. Defense council interposed an answer on behalf of Jet Aviation of Teterboro, Inc., plaintiff's actual employer, stating that plaintiff had incorrectly referred to it as Jet Aviation of America, Inc. Defense council also offered to stipulate transfer of the action from New York to New Jersey where it belonged. Instead of adopting these reasonable solutions to the problems he had created, plaintiff's attorney stubbornly continued along the wrong path he had chosen.

In *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the Supreme Court stated that a district court has "broad discretion" in imposing Rule 11 sanctions. *Id.* at ——, 110 S.Ct. at 2461. The Court said that abuse of such discretion would be found if the district court "based its ruling on an errone-

ous view of the law or on a clearly erroneous assessment of the evidence." *Id.* My colleagues say that their review of the district court's decision to impose sanctions is in accordance with this "deferential standard." I respectfully but strongly disagree. The conduct of plaintiff's attorney evidenced a complete lack of respect for our trial courts. Our condonation of such conduct will only encourage its repetition. Because I believe that in their exercise of Rule 11 sanctions, our district court judges deserve greater deference from our court than Judge Broderick is receiving in the instant case, I dissent.