Nancy **KOWALSKI–SCHMIDT,** et al., Plaintiffs,

v.

**CLS MORTGAGE, INC.,** et al., Defendants.

No. 95–CV–0935 (DRH).

United States District Court, E.D. New York.

Sept. 30, 1997.

Nancy Kowalski–Schmidt, Hicksville, NY, pro se.

Joanne K. Curtis, Ancram, NY, pro se.

Peter Wirs, Emigsville, PA, pro se.

Rosenberg & Fein, New York City by Jeffrey L. Rosenberg, for Defendants.

*MEMORANDUM AND ORDER*

HURLEY, District Judge.

Currently pending before the Court in the above-referenced case is the motion of Defendants seeking a variety of relief. For the reasons set forth below, the instant action is dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction.

### BACKGROUND

This case, along with another case involving similar parties, has a long history before this Court, most of which has been set forth in prior orders of the Court. For that reason, the Court offers only a brief summary of the factual background of the case. The instant action involves a dispute over liens on a parcel of property located in the State of Washington. Plaintiff Nancy Kowalski–Schmidt ("Kowalski–Schmidt") alleges that she, and on certain occasions Plaintiff Joanne Curtis ("Curtis"), received a series of deeds of trust to this property from Marjorie Giordano—the sister of Plaintiff Kowalski–Schmidt and a relative of Curtis—and Richard Hamm, Jr. Kowalski–Schmidt claims that she entrusted Ms. Giordano and Mr. Hamm with the execution and perfection of the deeds of trust; however, the deeds were never perfected or recorded.

In a loan transaction with Defendants CLS Mortgage, Inc. and Opportunity Management, Inc., Ms. Giordano and Mr. Hamm deeded the Washington property to those Defendants. (Compl. ¶ 23.) This deed was perfected and recorded in 1993. (*Id.*)

Plaintiffs claim that their interest in the Washington property is superior to that of Defendants. (Am.Compl. ¶ 23.) According to Plaintiffs, Defendants were aware of Plaintiffs' prior deeds, but disregarded them and proceeded with a non-judicial foreclosure on the Washington property in 1994. (*Id.* ¶ 28.) It appears that a foreclosure sale was never completed.

All Defendants remaining in this case are residents of the State of Washington. There are three Plaintiffs (collectively, "Plaintiffs"): Kowalski–Schmidt and Curtis, New York residents, and Peter J. Wirs, a Pennsylvania resident who allegedly was assigned an interest in the Washington property. The Court notes, preliminarily, that Defendants' motion is opposed by the memorandum of law of Plaintiff Peter Wirs, who is not an attorney but purports to raise his arguments on behalf of the other *pro se* plaintiffs. The other *pro se* plaintiffs have not submitted memoranda of law in opposition to Defendants' motion. Without addressing whether Mr. Wirs may properly submit papers on behalf of the other *pro se* litigants, the Court has considered fully the arguments raised by Mr. Wirs.

### DISCUSSION

#### I. The Present Motion

■ On the instant motion, Defendants seek: (1) dismissal the Amended Complaint for a number of reasons, to wit, lack of personal jurisdiction, improper venue, failure to join one or more indispensable parties, and failure to state a claim; (2) summary judgment; and (3) alternatively, the transfer of this case to the United States District Court for the Western District of Washington. (Defs.' Not. of Mot. at 1–2.) The Court, when presented with various grounds upon which relief is sought, should address the issue of personal jurisdiction first. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir.1963); *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F.Supp. 765, 769 (E.D.N.Y.1995) ("Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint.") (citations omitted); *Viking Penguin, Inc. v. Janklow*, 98 F.R.D. 763, 763 (S.D.N.Y.1983). *See generally* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1351 (1990). Accordingly, the Court proceeds to a discussion of personal jurisdiction.

#### II. Personal Jurisdiction

##### A. General Standards

■ As previously set forth in a prior decision of the Court in a case involving several of the same parties, the Court should look to New York State law to determine whether it may exercise personal jurisdiction

over the Defendants in this diversity case. *See, e.g., CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 363 (2d Cir.1986) (citation omitted) ("Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits."). "If jurisdiction is appropriate under the relevant statute, the court must then decide whether exercise of jurisdiction comports with due process." *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990) (citation omitted). "The plaintiff generally has the burden of proof in establishing personal jurisdiction over the defendant." *Id.* (citation omitted). *See also Ghazoul v. International Management Servs., Inc.,* 398 F.Supp. 307, 309 (S.D.N.Y. 1975) ("The plaintiff has the burden of sustaining an assertion of personal jurisdiction against a challenge.") (citations omitted).

### B. *Procedures on a Motion to Dismiss*

■ The Second Circuit has stated that "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction, a district court has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

> [The Court] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.

*Id.* (citations omitted). "Whatever procedural path the district court chooses to follow determines the plaintiff's burden of proof and the standard to be applied on appeal." *CutCo Indus.,* 806 F.2d at 364; *see also Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.) ("[T]he plaintiff's obligation varies depending on the procedural posture of the litigation.").

■ "If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland,* 664 F.2d at 904. "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial." *Id. See also CutCo Indus.,* 806 F.2d at 366. "After discovery, the

plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball,* 902 F.2d at 197 (citations omitted). "At that point, the *prima facie* showing must be factually supported." *Id.* "But if the court holds an evidentiary hearing—in a manner similar to determining the issue at trial—the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." *CutCo Indus.,* 806 F.2d at 364 (citation omitted).

This Court, in its discretion, chooses not to conduct an evidentiary hearing on the motion to dismiss for lack of personal jurisdiction. Therefore, Plaintiffs need only make a "prima facie showing of jurisdiction through [their] own affidavits and supporting materials ..., notwithstanding any controverting presentation by ... [Defendants], to defeat the motion." *See Marine Midland,* 664 F.2d at 904 (citations omitted); *see also Ball,* 902 F.2d at 197; *Bialek v. Racal–Milgo, Inc.,* 545 F.Supp. 25, 33 (S.D.N.Y.1982).

### C. *New York State Long–Arm Jurisdiction*

■ As noted above, the Court looks to New York law to determine whether there is personal jurisdiction in this case. *CutCo Indus.,* 806 F.2d at 363. Plaintiffs claim that jurisdiction in this case is proper under the following provision of New York's Long–Arm Statute:

§ 302. Personal jurisdiction by acts of non-domiciliaries

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ..., who in person or through an agent:

. . . . .

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

. . . . .

(ii) expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

N.Y. C.P.L.R. 302(a)(3)(ii) ("Section 302(a)(3)(ii)") (McKinney 1990). This portion of Section 302(a)(3) gives a court personal jurisdiction over a non-domiciliary if four conditions are met:

(1) the non-domiciliary commits a tort outside of New York; and

(2) there is injury to the plaintiff in New York; and

(3) the non-domiciliary should reasonably have foreseen consequences in New York; and

(4) the non-domiciliary derives substantial revenue from interstate or international commerce.

*See Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 786, 402 N.E.2d 122, 124–25 (1980).

### D. *Application to the Instant Motion*

On the instant motion, Defendants confine most of their arguments regarding personal jurisdiction to the minimum contacts test under the due process clause of the United States Constitution and devote less attention to the Long–Arm Statute. Defendants do not address Section 302(a)(3)(ii), which extends jurisdiction, in certain circumstances, over non-domiciliaries who commit tortious acts outside of New York. The Court does not reach much of Defendants' argument, however, because only "[i]f jurisdiction is appropriate under the relevant statute ... must [the court] then decide whether exercise of jurisdiction comports with due process." *Savin*, 898 F.2d at 306.

In opposition to Defendants' motion, Plaintiffs argue that jurisdiction is proper under Section 302(a)(3)(ii). The first allegedly tortious act which Plaintiffs contend gives rise to jurisdiction is the fraudulent representations which "flow from the failure of Defendant CLS, and its directors, officers, and agents to disclose what was their duty to disclose as to the unenforceable nature of Plaintiffs' unperfected and unrecorded deed...." (Pls.' Mem. at 2.) That is, "De-fendants deliberately [misled] the Plaintiffs into not perfecting their pre-existing deed of trust...." (*Id.*) "The second fraudulent representations flow from a statement made by Defendant CLS's counsel ... in a Federal Bankruptcy proceeding under the pretense of knowledge ... that his statement was true when in fact he knew he had no such knowledge whether the statement was true." (*Id.*)

For present purposes, the Court will assume that these allegations adequately meet the first prong of the *Fantis Foods* test, to wit, that Defendants have committed a tort outside of New York. *See Fantis Foods*, 425 N.Y.S.2d at 786, 402 N.E.2d at 124–25. The Court need not address the third (reasonable foreseeability of consequences in New York) or fourth (substantial revenue derived from interstate or international commerce) prongs of the *Fantis Foods* test, *see id.*, because in the Court's view Plaintiffs have failed to make a *prima facie* showing that the second prong of that test—injury in New York—has been established.

Plaintiffs, in their otherwise thorough submissions to the Court, only briefly address the issue of injury in New York, claiming that jurisdiction under Section 302(a)(3) arises where "alleged tortious misrepresentations caused New York plaintiffs loss of money." (Pls.' Mem. at 3.) In their Amended Complaint, Plaintiffs allege that the acts of Defendants "constitute a cloud on the title of the Plaintiffs in and to said Subject Property, which diminishes its value and interferes with Plaintiffs' rights thereof as senior lienholder and position of security of pledge of property thereof." (Am.Compl.¶ 80.) Plaintiffs, two of whom reside in New York and one of whom resides in Pennsylvania, claim to have suffered financial injury in that the security for the alleged $100,000 loans to Marjorie Giordano and Richard Hamm has been affected. Plaintiffs argue that Defendants' actions "destroy the Plaintiffs' creditors rights." (Pls.' Mem. at 3.)

Under New York law, "[i]njury within the state for purposes of the [Long–Arm] statute must be direct, and not remote or consequential." *Faherty v. Fender*, 572 F.Supp. 142, 149 (S.D.N.Y.1983) (internal

quotation and citation omitted). As the New York Court of Appeals has discussed:

> It has long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there. If a plaintiff could satisfy the requirements of CPLR 302 (subd. [a], par. 3, cl.[ii] ) on [an] attenuated consequence of [a] defendant's act . . . it would burden unfairly nonresidents whose connection with the state is remote.

*Fantis Foods*, 425 N.Y.S.2d at 787, 402 N.E.2d at 126 (citations and internal quotations omitted). *See also Pocahontas Supreme Coal, Inc. v. National Mines Corp.*, 90 F.R.D. 67, 73 (S.D.N.Y.1981) ("[T]he occurrence of financial consequences in New York due to the fortuitous location of the plaintiffs in New York is not a sufficient basis for jurisdiction under Sec. 302(a)(3)."); *Cooperstein v. Pan–Oceanic Marine, Inc.*, 124 A.D.2d 632, 507 N.Y.S.2d 893, 895 (2d Dep't 1986) ("[T]here must be a more direct injury within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here.") (citations omitted).

█ It is well established that, for the purposes of Section 302(a)(3), " 'the situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.' " *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990) (quoting *Carte v. Parkoff*, 152 A.D.2d 615, 543 N.Y.S.2d 718, 719 (2d Dep't.1989)). *See also Weiss v. Brant*, No. 93 Civ. 750, 1995 WL 362394, at *3 (E.D.N.Y. May 31, 1995) ("Under Section 302(a)(3), an injury will be located at the site where the critical events occurred."); *United Bank of Kuwait, PLC v. James M. Bridges Ltd.*, 766 F.Supp. 113, 116 (S.D.N.Y.1991) ("New York courts uniformly hold that the situs of a nonphysical commercial injury is 'where the critical events associated with the dispute took place.' ") (citations omitted); *Don King Productions., Inc. v.*

*Douglas*, 735 F.Supp. 522, 531 (S.D.N.Y.1990) (same); *Ingraham v. Carroll*, 652 N.Y.S.2d 361 (3d Dep't), *leave to appeal granted*, 89 N.Y.2d 812, 657 N.Y.S.2d 405, 679 N.E.2d 644 (1997).

█ "Thus in cases where there has been no showing that the critical events took place in New York, New York case law compels a dismissal of the action." *Data Communication, Inc. v. Dirmeyer*, 514 F.Supp. 26, 31 (E.D.N.Y.1981).

An analysis of the facts of several cases is useful in understanding where an injury will be found in New York for purposes of the Long–Arm statute. For example, in *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir.1990), a New York resident filed suit for wrongful discharge from his employment at a New Jersey airport. He argued that his alleged wrongful discharge resulted in injury in New York within the purview of the Long–Arm statute because he suffered financial loss in New York. *Id.* at 1046. The Second Circuit affirmed the district court's dismissal of the plaintiff's complaint for lack of personal jurisdiction, explaining:

> [D]espite the fact that [Plaintiff] may suffer the economic consequences of his firing in New York, the location of the original event which caused the injury is New Jersey. Undoubtedly, the exercise of personal jurisdiction must be based on a more direct injury within the state than the type of indirect financial loss alleged by [Plaintiff].

*Id.* at 1046 (citing *Fantis Foods*, 425 N.Y.S.2d at 786–87, 402 N.E.2d at 124–26) (further citations omitted).

*Chemical Bank v. World Hockey Assoc.*, 403 F.Supp. 1374 (S.D.N.Y.1975), involves facts which are analogous to those in the instant case. In *Chemical Bank*, plaintiff Chemical Bank made a loan secured by the pledge and assignment of a hockey franchise owned by franchisor World Hockey Association ("WHA"). Thereafter, WHA transferred the franchise free of plaintiff's lien. According to the complaint, the entity receiving the franchise knew or should have known of Chemical Bank's lien. *Id.* at 1380. The court determined, *inter alia*, that personal

jurisdiction was not established under Section 302(a)(3) because no injury was sustained in New York. Instead, the injury occurred in the other states where the wrongful transfer of the franchise was negotiated, or where the hockey franchise was thereafter operated. The relevant dealings took place outside of New York; therefore, although Chemical Bank "experienced financial consequences" in New York, that was insufficient to establish personal jurisdiction. *Id.*

A recent case, *Jaisan, Inc. v. Sullivan*, No. 96 Civ. 4336, 1997 WL 86402, at *5 (S.D.N.Y. Feb.28, 1997) involved a plaintiff who operated a company which locates estates to which its customers might be heirs. The company located a decedent's estate to which defendants were allegedly entitled. Plaintiff sued defendants for nonpayment under the contract for the "heir-locator" services. Judge Knapp determined that there was no injury in New York because the estate shares were located in Arizona, the New Mexico courts distributed the assets, and "the only connection to New York is plaintiff's presence." *Id.* *See also American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 434–35 (2d Cir.1971) (although plaintiffs suffered some harm in New York because their profits were affected by the loss of customers elsewhere, "that sort of derivative commercial injury in the state is only the result of plaintiff's domicile here"); *Weiss v. Brant*, No. 93 Civ. 750, 1995 WL 362394, at *4 (E.D.N.Y. May 31, 1995) ("It would be anomalous to hold that the receipt in New York of fraudulent out-of-state communications by itself constitutes an in-state injury, when the out-of-state nature of such communications requires that the fraud be deemed to have occurred outside the state."); *Crouch v. Atlas Van Lines, Inc.*, 834 F.Supp. 596, 604 (N.D.N.Y.1993) (no jurisdiction under 302(a)(3) over a fraud claim, as "an injury does not occur in New York because a plaintiff suffers a loss of income within the state."); *Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A.*, 85 A.D.2d 861, 446 N.Y.S.2d 447 (3d Dep't. 1981) (diminution in value of plaintiff's second mortgage and note located in New York does not establish injury where alleged acts of legal malpractice causing such diminution took place in Florida and property was located in Florida).

■ After reviewing the case law pertaining to Section 302(a)(3), the Court finds that the Plaintiffs have not made a *prima facie* showing that they have suffered an injury in New York within the purview of New York's Long–Arm Statute. The critical events related to the dispute all took place in Washington; it was there that the alleged fraudulent misstatements were made to Ms. Giordano (who is, parenthetically, not a party to this action). Further, the bankruptcy proceeding in which misrepresentations were allegedly made was in the United States Bankruptcy Court located in Washington; the misrepresentation affected a bankruptcy estate located and administrated in that state. Although the alleged deeds of trust to Plaintiffs may have been executed in New York, the executions of the trusts are not torts allegedly giving rise to jurisdiction in this state.

The property in which Plaintiffs allegedly hold a security interest is located in Washington. (Am.Compl.¶ 22.) Plaintiffs argue that Defendants injured Plaintiffs' interest in the property. (*See, e.g.*, Compl. ¶ 31 ("The claim of the Defendants is a cloud on the title of the Plaintiffs in and to said land, which diminishes its value and interferes with Plaintiffs' rights thereof as senior lienholder and position of security of pledge of property thereof.").) The alleged cloud on title is a cloud on the title of Washington property. In sum, the indirect financial consequences that Plaintiffs may suffer in New York as a result of a lower lien status are merely the result of the fact that two Plaintiffs reside in New York; this is precisely the situation in which numerous courts have found that there is no injury in New York.

Plaintiffs' citation of *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F.Supp. 765 (E.D.N.Y.1995) and *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 900 (2d Cir. 1980) do not require the contrary result. In *Sunrise Indus.*, the court did not discuss whether there was injury within New York. *Hargrave* involved a fraudulent statement

made in California which induced the purchase of goods from California by a New York resident. Defendant has misrepresented the quality of goods purchased and shipped to New York. The court emphasized that "the injury was immediately felt in New York where plaintiffs were domiciled and doing business, where they were located when they received the misrepresentations, and where the [products] were to be shipped." *Id.* at 900. In this Court's view the injury here is substantially more remote than in *Hargrave,* in part because the property at issue here remains in Washington State, whereas in *Hargrave* the defective goods were shipped to New York.

Plaintiffs have not met their burden of establishing personal jurisdiction under the section they cite, 302(a)(3). Any effect on Plaintiffs in New York is purely the result of the fortuitous circumstance of the residence of Kowalski–Schmidt and Curtis in New York. Accordingly, the instant action is dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

Because the Court finds that Plaintiffs have failed to establish personal jurisdiction under the New York Long–Arm statute, the Court need not address the due process considerations raised by the parties, although the Court expresses some doubt as to whether due process requirements could be met by the attenuated connections to New York present here.

## CONCLUSION

For the reasons indicated above, Defendants' motion to dismiss for lack of personal jurisdiction is granted, and Defendants' other motions are denied as moot.

SO ORDERED.