**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: December 4, 2014        Decided: June 4, 2015)

Docket No. 14-104-cv

———————————————————

JONI EADES and LEVERE C. PIKE, JR.,

*Plaintiffs-Appellants*,

v.

KENNEDY, PC LAW OFFICES,

*Defendant-Appellee.*[*]

———————————————————

Before:

SACK, LYNCH, and LOHIER, *Circuit Judges*.

The Plaintiffs sued Kennedy, PC Law Offices, alleging that its attempts to collect a debt owed to a Pennsylvania nursing home violated the Fair Debt Collection Practices Act (FDCPA). The United States District Court for the Western District of New York (Larimer, J.) dismissed the Plaintiffs' amended complaint, holding that it lacked personal jurisdiction over Defendant, the payment owed to the nursing home was not a "debt" as defined by the FDCPA, and the amended complaint failed to state a claim upon which relief could be granted. We **AFFIRM** in part and **VACATE** in part and **REMAND**.

---

[*]   The Clerk of the Court is directed to amend the caption of this case as set forth above.

BRIAN L. BROMBERG, Bromberg Law Office, P.C.,
New York, NY (Jonathan R. Miller, Bromberg Law
Office, P.C., New York, NY; Kenneth R. Hiller, Seth J.
Andrews, Law Offices of Kenneth Hiller, PLLC,
Amherst, NY, *on the brief*), for *Plaintiffs-Appellants*.

S. DWIGHT STEPHENS (John H. Somoza, *on the brief*),
Melito & Adolfsen P.C., New York, NY, *for
Defendant-Appellee*.

LOHIER, *Circuit Judge*:

Plaintiffs Joni Eades and Levere C. Pike, Jr. sued Defendant Kennedy,

PC Law Offices ("Kennedy"), alleging that Kennedy's attempts to collect a

debt from the Plaintiffs violated the Fair Debt Collection Practices Act

(FDCPA). The United States District Court for the Western District of New

York (Larimer, J.) dismissed the Plaintiffs' amended complaint, holding

primarily that the court lacked personal jurisdiction over Kennedy. In the

alternative it also concluded that the payment allegedly owed to Kennedy's

client, a Pennsylvania nursing home, was not a "debt" under the FDCPA and

that the amended complaint failed to state a claim upon which relief could be

granted. We affirm in part and vacate in part and remand.

**BACKGROUND**

We draw the following facts from the allegations in the Plaintiffs' amended complaint and documents attached thereto or incorporated by reference therein. See Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 685 n.2 (2d Cir. 2013). In October 2010 Doris Pike was admitted to Corry Manor, a Pennsylvania nursing home. Two months later Corry Manor required Ms. Pike's husband, Levere C. Pike, Jr., to sign an admission agreement in order to keep his wife at the nursing home. Under the admission agreement, Mr. Pike promised to use Ms. Pike's assets to pay for the nursing care provided to her. The agreement also required Mr. Pike to "assert[] that [he] has legal access to [Ms. Pike's] income, assets or resources."

When Ms. Pike passed away in January 2011, Corry Manor claimed an outstanding balance of approximately $8,000 for its nursing care services. Corry Manor retained Kennedy, a debt collector, to collect that balance. In July 2011 Kennedy mailed a debt collection letter to Mr. and Ms. Pike's daughter, Joni Eades, at her home in New York. The letter stated, "[Y]ou may be held personally liable for the cost of your mother's care" pursuant to

Pennsylvania's indigent support statute, 23 Pa. Cons. Stat. § 4603, and quoted portions of that statute and Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. Cons. Stat. §§ 5101-5110.  It also stated that Kennedy would assume the debt was valid unless Eades notified it of a dispute within 30 days.  During a subsequent telephone conversation with Eades, a Kennedy employee stated that if the debt was not paid Kennedy would put a lien on Mr. Pike's home and garnish Eades's wages.  When Eades disclaimed responsibility for her mother's medical bills, the Kennedy employee replied, "[S]ervices were provided, the bill needs to be paid and you are responsible."

In December 2011 Kennedy filed a complaint against the Plaintiffs on behalf of Corry Manor in Pennsylvania state court.  The complaint alleged that Mr. Pike had breached the admission agreement by failing to use Ms. Pike's resources to pay the balance owed to Corry Manor.  The complaint also alleged that by not paying the debt, the Plaintiffs had violated Pennsylvania's indigent support and fraudulent transfer statutes.  Kennedy mailed the summons and complaint to the Plaintiffs' homes in New York.

The Plaintiffs responded by suing Kennedy in the United States District Court for the Western District of New York.  Their amended complaint alleged that Kennedy violated various provisions of the FDCPA, 15 U.S.C. §§ 1692-1692p, in connection with the filing of the Pennsylvania lawsuit and the letter and telephone call to Eades.  The Plaintiffs also alleged that Kennedy's suit for breach of the admission agreement violated the FDCPA, because the financial obligations imposed by the admission agreement were unlawful under the Nursing Home Reform Act, 42 U.S.C. §§ 1395i–3, 1396r (NHRA). They did not, however, assert a separate claim for a violation of the NHRA. When Kennedy moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), the Plaintiffs responded, among other things, that Kennedy's lawsuit in Pennsylvania violated the FDCPA because the NHRA preempted Pennsylvania's indigent support statute.

The District Court granted Kennedy's motion, holding that it lacked personal jurisdiction over Kennedy and that, in any event, the Plaintiffs' alleged obligation to pay Corry Manor did not constitute a "debt" as defined

by the FDCPA, the NHRA did not preempt Pennsylvania's indigent support statute, and the complaint failed adequately to allege that Kennedy's collection efforts violated the FDCPA or to state a cause of action under the NHRA.

This appeal followed.

**DISCUSSION**

1. <u>Personal Jurisdiction</u>

As an initial matter, we address whether the Plaintiffs' factual allegations support the exercise of personal jurisdiction over Kennedy. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 167 (2d Cir. 2013) (quotation marks omitted). "To determine personal jurisdiction over a non-domiciliary in a case involving a federal question," we first "apply the forum state's long-arm statute." <u>Chloé v. Queen Bee of Beverly Hills, LLC</u>, 616 F.3d 158, 163 (2d Cir. 2010). If the long-arm statute permits personal jurisdiction,

we analyze whether personal jurisdiction comports with due process protections established under the Constitution. Id. at 164.

The Plaintiffs assert that jurisdiction lies under § 302(a)(1) of New York's Civil Practice Law, which provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Licci, 732 F.3d at 168 (quotation marks omitted). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Chloé, 616 F.3d at 170 (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)) (quotation marks omitted). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007) (quotation marks omitted).

Kennedy's activities in New York—mailing one debt collection notice to Eades, engaging in one debt collection phone call with Eades, and mailing a summons and complaint to both Plaintiffs—are enough to establish personal jurisdiction under § 302(a)(1). On this record, it appears that negotiating debt collections constituted "a major aspect of [Kennedy's] mission—part of its principal reason for being." Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 7 N.Y.3d 65, 72 (2006) (quotation marks omitted). And Kennedy initiated its debt collection efforts in an active (rather than responsive) attempt to collect money from two New York residents. Cf. Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 377-78 (2014). Moreover, the Plaintiffs' FDCPA claims arise directly from Kennedy's business communications into New York. See Bates v. C & S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992) ("[R]eceipt of a collection notice is a substantial part of the events giving rise to a claim under the [FDCPA].").

We turn then to whether the exercise of personal jurisdiction comports with the Constitution's due process protections.  It does.  As an initial matter, we note that "despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare."  Licci, 732 F.3d at 170.  "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  As to the first requirement, "we evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test."  Licci, 732 F.3d at 170 (quotation marks omitted).  Where, as here, specific jurisdiction is asserted, "minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the

forum and could foresee being haled into court there." Id. (quotation marks and alterations omitted). "'[T]he commission of some single or occasional acts of the corporate agent in a state' may sometimes be enough." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (quoting Int'l Shoe, 326 U.S. at 318).

If minimum contacts exist, the defendant has to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Licci, 732 F.3d at 173 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (quotation mark omitted). These considerations include

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Chloé, 616 F.3d at 164. Ultimately, the exercise of personal jurisdiction is reasonable if it "would comport with fair play and substantial justice." Licci, 732 F.3d at 170 (quoting Burger King, 471 U.S. at 476).

Kennedy's three purposeful contacts with New York meet the "minimum contacts" test. See Daimler AG, 134 S. Ct. at 754. The considerations we identified in Chloé (and more recently in MacDermid, Inc. v. Deiter, 702 F.3d 725, 730 (2d Cir. 2012)) do not compel a contrary conclusion. Kennedy, located in Pennsylvania, can easily defend itself in New York; New York "has a 'manifest interest in providing effective means of redress for its residents'"; and the Plaintiffs have an interest in adjudicating their case in the state where they reside. Chloé, 616 F.3d at 173 (quoting Burger King, 471 U.S. at 483). The fourth factor is neutral: the controversy can be resolved efficiently in either New York or Pennsylvania. Finally, the States share an interest in enabling plaintiffs to litigate FDCPA claims in their states of residence. See, e.g., Sluys v. Hand, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) (noting that FDCPA plaintiffs should be able to file suit in their states of residence because "[o]therwise, [debt collectors] could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned").

11

For these reasons, the District Court had personal jurisdiction over Kennedy pursuant to N.Y. C.P.L.R. § 302(a)(1).

2. Failure To State a Claim Under the FDCPA

The District Court also concluded that the Plaintiffs failed to state a claim under the FDCPA for two reasons: the $8,000 payment sought by Kennedy was not a "debt" under the FDCPA; and Kennedy did not engage in the kind of conduct that would be actionable under the FDCPA. We consider each conclusion in turn.

a. Definition of "Debt" Under the FDCPA

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "[A]t a minimum, the [FDCPA] contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." Beggs v. Rossi, 145 F.3d 511, 512 (2d Cir. 1998) (quotation marks omitted).

Here, the $8,000 balance owed to Corry Manor constitutes a "debt"

under the FDCPA. The balance arose out of a consumer transaction in which

nursing home services were exchanged for a monetary obligation. As such, it

"encompass[es] that type of <u>pro tanto</u> exchange which the statutory definition

envisages." <u>Boyd v. J.E. Robert Co.</u>, 765 F.3d 123, 126 (2d Cir. 2014) (quotation

marks omitted). The nursing home services—nursing care for Ms. Pike—

were primarily for "personal" or "family" purposes. 15 U.S.C. § 1692a(5).

Moreover, the Plaintiffs are "consumers" because Kennedy claims that they

are obligated to pay the balance, <u>id.</u> § 1692a(3) (defining "consumer" as "any

natural person obligated or allegedly obligated to pay any debt"), and for the

same reason, the balance is an "alleged obligation of a consumer," <u>id.</u> §

1692a(5).

We appreciate that some other courts have held that an arguably

analogous statutory obligation, child support, is not a debt under the FDCPA.

For example, the Fourth Circuit held that child support obligations "do not

qualify as 'debts' under the FDCPA because they were not incurred to receive

consumer goods or services[;] [r]ather, [a state agency] imposed these

obligations upon appellants to force them to fulfill their parental duty to support their children." Mabe v. G.C. Servs. Ltd. P'ship, 32 F.3d 86, 88 (4th Cir. 1994). Kennedy argues that the Plaintiffs' obligation to pay similarly arises from Pennsylvania's indigent support and fraudulent transfer statutes and as such does not qualify as a "debt." We disagree. In determining whether an obligation is a "debt" under the FDCPA, the relevant consideration is whether the obligation arose out of a transaction of the type specified in the FDCPA, not whether the obligation is imposed or enforceable by statute. See 15 U.S.C. § 1692a(5). Here, the Plaintiffs' alleged obligation to pay the $8,000 balance exists only because of the exchange of nursing home services for money and accordingly constitutes a debt under the FDCPA.

b. Kennedy's Debt Collection Activities

We next consider whether Kennedy's debt collection activities—the Pennsylvania lawsuit and the letter and telephone call to Eades—are adequately alleged to be actionable under the FDCPA.

14

As an initial matter, the Plaintiffs claim that Kennedy violated §§ 1692e, e(2), e(5), e(10), and 1692f(1)[1] of the FDCPA by attempting to collect the $8,000 debt and by filing and pursuing the Pennsylvania lawsuit. They advance four arguments why this is so: first, that Kennedy's collection efforts and lawsuit in Pennsylvania were based on an admission agreement that violated the NHRA; second, that Kennedy's lawsuit was premised on a Pennsylvania statute that is preempted by the NHRA; third, that Kennedy filed the lawsuit without supporting evidence; and fourth, that the lawsuit falsely alleged that

---

[1] As relevant here, § 1692e prohibits a debt collector from any of the following: "[t]he false representation of . . . the character, amount, or legal status of any debt," "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2), e(5), e(10). Section 1692f(1) prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. § 1692f(1). "[T]he FDCPA's definition of 'debt collector' includes lawyers who regularly, through litigation, attempt to collect consumer debts," Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 593 (2010), and debt collectors violate the FDCPA by taking or threatening to take legal action where recovery is precluded as a matter of law, see 15 U.S.C. § 1692e(5).

Ms. Pike's property was fraudulently transferred. We address each of these arguments in turn.

We reject the first argument because the provisions of the admission agreement on which the Plaintiffs rely do not violate the NHRA. The NHRA provides that a nursing facility[2] that participates in Medicare or Medicaid "must . . . not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility," 42 U.S.C. §§ 1395i-3(c)(5)(A)(ii), 1396r(c)(5)(A)(ii), with the caveat that a facility may require "an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care," id. §§ 1395i-3(c)(5)(B)(ii), 1396r(c)(5)(B)(ii). The breach of contract claim that Kennedy brought against Mr. Pike in the Pennsylvania action alleged that "Mr. Pike's failure to use Doris Pike's resources to pay Corry Manor is a breach of the Agreement."

---

[2] Kennedy does not dispute that Corry Manor is a "nursing facility" or "skilled nursing facility" as defined by the NHRA. See 42 U.S.C. §§ 1395i-3(a), (c)(5)(A)(ii), 1396r(a), (c)(5)(A)(ii).

Joint App'x 29 (emphasis added). Mr. Pike admitted he had legal access to Ms. Pike's resources, and the NHRA permitted Corry Manor to require him to agree to provide payment for Ms. Pike's care from Ms. Pike's resources, so long as the contract did not require him to incur personal financial liability. But Mr. Pike never alleged that the admission agreement required him to pay any of his own money for Ms. Pike's care or to incur personal financial liability in the event that Ms. Pike's income or resources ran out. Instead, he alleged that the agreement required him to use his wife's assets to pay for her care. The NHRA permits that requirement.

We also reject the Plaintiffs' preemption argument that the NHRA actually conflicts with and therefore implicitly preempts the Pennsylvania indigent support statute on which Kennedy's lawsuit relies. "An actual conflict between state and federal law exists when compliance with both federal and state regulations is a physical impossibility, . . . when state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[,] . . . [or] where federal law is in irreconcilable conflict with state law." Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 162

17

(2d Cir. 2013) (quotation marks omitted).  That said, we "presume federal statutes do not . . . preempt state law."  Bond v. United States, 134 S. Ct. 2077, 2088 (2014).

With these principles in mind, we conclude that there is no actual conflict between the NHRA and Pennsylvania's indigent support statute.  The "central purpose" of the NHRA is to improve the quality of care for Medicaid-eligible nursing home residents.  H.R. Rep. No. 100-391, pt. 1, at 452 (1987), reprinted in 1987 U.S.C.C.A.N. 2313-1, 2313-272; see Resident Councils of Wash. v. Leavitt, 500 F.3d 1025, 1028 (9th Cir. 2007).  And another principal purpose of the particular NHRA provisions in this case is to protect the rights of nursing home residents in connection with the admissions policies of nursing facilities.  See, e.g., 42 U.S.C. §§ 1395i–3(c)(5), 1396r(c)(5)); H.R. Rep. No. 100-391, pt. 1, at 457-58, reprinted in 1987 U.S.C.C.A.N. at 2313-277-78. Nothing in the NHRA indicates that its purpose is to shield family members of nursing home residents from financial responsibility for the residents' medical care; its aim is to protect actual or prospective residents of nursing care facilities from expulsion or from a denial of admission based on the

failure of family members to pay.  Accordingly, the NHRA is not inconsistent with the Pennsylvania indigent support statute, which holds an indigent person's spouse or child liable for the person's maintenance or financial support, unless the spouse or child is financially unable to support the indigent person or meets other statutory exceptions.  23 Pa. Cons. Stat. § 4603(a).  By its terms the Pennsylvania statute does not appear to <u>condition</u> the continuing care of the indigent person on a family member's financial support.  Thus, a nursing home can petition a court to order an indigent resident's spouse or child to pay for the resident's nursing home care pursuant to the state statute without violating the NHRA, as long as the nursing home refrains from conditioning the resident's admission, expedited admission, or continued stay on a third party guarantee of payment.  For these reasons, we conclude that the indigent support statute does not conflict with the NHRA.

We are also not persuaded by the Plaintiffs' third argument that Kennedy violated the FDCPA by filing its Pennsylvania lawsuit without sufficient evidence to support its claims against them.  The Plaintiffs failed to

allege that Kennedy's claims were frivolous or baseless—for example, that Ms. Pike fulfilled her financial obligations to Corry Manor, that Mr. Pike did not sign the admission agreement, or even that the Plaintiffs are not "debtors" under Pennsylvania's fraudulent transfer statute, see 12 Pa. Cons. Stat. § 5104(a); 23 Pa. Cons. Stat. § 4603(a). The Plaintiffs' amended complaint also fails to allege that Kennedy was without a good faith basis to file the lawsuit. And standing alone, the allegation that Kennedy filed and pursued the lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt pursuant to § 1692e, e(2), e(5), or e(10) of the FDCPA, see Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 331-33 (6th Cir. 2006), or that it constituted the collection of an amount not permitted by law pursuant to §§ 1692e(5) and 1692f(1).

In their fourth and final argument relating to the Pennsylvania lawsuit the Plaintiffs contend that Kennedy violated the FDCPA by "falsely alleging in the state lawsuit that Doris Pike's property had been fraudulently transferred to [the] Plaintiffs." Am. Compl. ¶ 36(G); see 15 U.S.C. §§

20

1692e(2)(A), e(10), 1692f(1). The record contains not one indication that this allegation is untrue, and the Plaintiffs' "naked assertion[,] devoid of further factual enhancement," that Kennedy's fraudulent transfer allegation is false fails to state a plausible claim for relief on this basis. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted).

Separate and apart from their claims relating to the Pennsylvania lawsuit, the Plaintiffs also claim that Kennedy engaged in "false, deceptive, misleading, unfair and unconscionable conduct" in violation of 15 U.S.C. §§ 1692e, 1692f, and 1692f(1) by telling Eades in a collection letter that she was responsible for her mother's medical bill. The Plaintiffs argue that Kennedy sent Eades a collection letter that, in discussing her potential liability, omitted important portions of the indigent support and fraudulent transfer statutes—in particular, that she would not be liable under Pennsylvania's indigent support statute if she were financially unable to support her mother, that courts may consider multiple factors in determining whether a debtor actually intended to hinder, delay, or defraud a creditor under the fraudulent

transfer statute, and that the statute provides for defenses against a creditor's claim.[3]

"Whether a collection letter is false, deceptive, or misleading under the FDCPA is determined from the perspective of the objective least sophisticated consumer." Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012) (quotation marks omitted). "Under this standard, collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." Id. (quotation marks omitted). For instance, we have held that the least sophisticated consumer could interpret a collection letter's statement that "'Your account is NOT eligible for bankruptcy discharge' as representing, incorrectly, that the debtor is completely foreclosed from seeking bankruptcy discharge of the debt in question." Id. at 234. But "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice[,] and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable

---

[3] The Plaintiffs also resurrect the NHRA violation and preemption arguments that we have already rejected.

misinterpretations of collection notices." Id. at 233-34 (quotation marks omitted).

We conclude that even an unsophisticated consumer could not reasonably interpret Kennedy's collection letter as purporting to recite all relevant defenses and considerations. The letter explicitly warns that it is quoting the statutes only "in part." Joint App'x 68-69. It does not state that Eades has no defenses. It tells her that she "may be held . . . liable" and that it "may be entitled to recover the property transferred," not that she is liable. Joint App'x 69 (emphases added). And it clarifies that the indigent support statute applies only "to the extent the child of an indigent person is able to pay." Joint App'x 68. Under these circumstances, the Plaintiffs have failed to state a claim that the letter was false, deceptive, or misleading under § 1692e, or constitutes an unfair or unconscionable means of attempting to collect a debt under § 1692f.

Finally, the Plaintiffs claim that Kennedy violated 15 U.S.C. § 1692e(4) when it stated, during a telephone call, that it would garnish Eades's wages if she did not pay the debt, and §§ 1692e(4) and 1692f(6) when it stated that it

would place a lien on Mr. Pike's home if the debt remained unpaid. The Plaintiffs argue that these statements constituted illegal threats to take immediate, pre-judgment action. Having largely dismissed this case for lack of personal jurisdiction, the District Court did not consider these last two claims. On appeal, moreover, the parties briefed them only cursorily. We think, therefore, that the District Court is better positioned to consider them in the first instance. See Correspondent Servs. Corp. v. First Equities Corp. of Fla., 338 F.3d 119, 125 (2d Cir. 2003). Accordingly, we remand these claims to the District Court.[4]

**CONCLUSION**

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, we AFFIRM in part and VACATE in part and REMAND for further proceedings consistent with this opinion.

---

[4] On appeal, the Plaintiffs attempt to bring new claims under §§ 1692e(7) and 1692i. As the Plaintiffs failed to plead these claims in the amended complaint, we do not consider them. Of course, on remand the District Court is free to consider any motion for leave to further amend the complaint.