Timothy BOYCE and Courtney Boyce,

v.

CYCLE SPECTRUM, INC., AZ Velo Imports, Inc., CS Velo AZ Inc., AZ Desert Velo, Inc., CS Bike, Inc., CS Velo HT, Inc., Velo BDBI Support, Inc., Cycle Support, Inc., Spratt Cycle Support, Inc., Windsor America Corporation, HL Corp (USA), Global Velo, Inc., and Advanced Sports, Inc., Defendants.

Advanced Sports, Inc., First Third–Party Plaintiff,

v.

Ideal Bike Corporation, Top Sport International Ltd and HL Corp. (Shenzhen), First Third–Party Defendants.

Velo BDBI Support, Inc. and Spratt Cycle Support, Inc., Second Third–Party Plaintiffs,

v.

Ideal Bike Corporation, Top Sport International Ltd and HL Corp. (Shenzhen), Second Third–Party Defendants.

14–CV–1163

United States District Court, E.D. New York.

Signed December 8, 2015

---

Gary A. Zucker, Zucker & Bennett, P.C., Brooklyn, NY, for Plaintiffs.

Alice Spitz, Oisin Lambe, Molod Spitz & Desantis, P.C., Richard H. Bakalor, Quirk & Bakalor, New York, NY, Stephanie M. Mazzotta, Quirk and Bakalor, P.C., Garden City, NY, for First Third–Party Plaintiff.

Angelantonio Bianchi, Cohen Kuhn & Associates, New York, NY, for Second Third–Party Plaintiffs/Defendants.

Paul E. Svensson, Hodges, Walsh, Messemer & Moroknek, LLP, White Plains, NY, for First Third–Party Defendants/Second Third–Party Defendants.

### MEMORANDUM & ORDER

Jack B. Weinstein, Senior United States District Judge:

### Table of Contents

I. Introduction... 259

II. Facts... 260

 A. Parties... 260

 B. The handle bar's path from manufacture to plaintiff... 261

 C. Procedural History... 262

III. Law... 263

 A. Pleading Burden... 263

 B. Personal Jurisdiction... 263

 1. New York General Jurisdiction... 264

 2. New York Long–Arm Statute... 264

 a) N.Y. C.P.L.R. § 302(a)(1)... 265

 b) N.Y. C.P.L.R. § 302(a)(2)... 265

 c) N.Y. C.P.L.R. § 302(a)(3)... 265

 3. Due Process... 266

 a) Minimum Contacts... 266

 b) Reasonableness... 267

IV. Application of Law to Facts... 268

 A. General Jurisdiction... 268

 B. Specific Jurisdiction... 268

 1. C.P.L.R. § 302(a)(1)... 268

 2. C.P.L.R. § 302(a)(2)... 270

 3. C.P.L.R. § 302(a)(3)... 270

V. Due Process... 270

VI. Conclusion... 270

## I. Introduction

This case illustrates the extensive internationalization of the production of consumer goods and some of the jurisdictional problems that exist in compensating for harms to consumers all over the world. Complexities are increased where the path a product takes between suppliers and customers is indirect, with intervening persons communicating by e-mail, internet, and other electronic devices of the modern world linked through satellites and transoceanic undersea cables.

The injured consumer should be entitled, where possible, to sue for damages in his or her local court, rather than a distant forum. *See, e.g.,* Essay, Mass Tort Jurisdiction and Choice of Law in a Multinational World Communicating by Extrater-

restrial Satellites, 37 Willamette L.Rev. 145, 146–51 (Winter 2001) (discussing need for availability of jurisdiction, venue, and choice of law based on national contacts). The defendant manufacturer is more likely to be able to afford travel to plaintiff's venue. And, in any event, modem video and other devices make presence in another venue much less burdensome to the well-to-do. *See Flores v. United States*, 142 F.Supp.3d 279, 287–88, No. 14–CV–3166, 2015 WL 6737744, at *5 (E.D.N.Y. Nov. 4, 2015) (discussing the availability of video conference technology in reducing the burden on witnesses located away from the courthouse).

To the extent that changes in the basis for personal jurisdiction are frozen by the Constitution, international treaties may provide an escape to a more flexible and rational modem approach. *Compare Asahi Metal Indus. Co. v.Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant.") *with* The Trans–Pacific Partnership, art. 28.4 (2015), https://ustr.gov/sites/default/files/TPP-Final-Text-Dispute-Settlement.pdf ("Where a dispute regarding any matter arises under this Agreement and under another international trade agreement to which disputing parties are party, including the WTO Agreement, the complaining Party may select the forum in which to settle the dispute."); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2800–01, 180 L.Ed.2d 765 (2011) (Ginsburg, J. [formerly professor and author on civil procedure and jurisdiction], dissenting) (examining case in which manufacturer "dealt with the United States as a single market," opining as follows: "The modem approach to jurisdiction over corporations and other legal entities, ushered in by *International Shoe*, gave prime place to reason and fairness. Is it not fair and reasonable, *given the mode of trading* of which this case is an example, to require the international seller to defend at the place its products cause injury?") (emphasis added).

The underlying claim in this case is that a bicycle handle bar was defectively manufactured, causing it to break and cause injuries when the bicycle's rider, plaintiff Timothy Boyce, lost control of the bicycle and fell to the ground. The instant motion is brought by third-party defendant HL Corp. (Shenzhen) ("HL Corp."), a company based in China with no direct New York contacts. It was impleaded by three defendants through two separate third-party complaints. All three impleading defendants seek contribution and indemnification from HL Corp. HL Corp moves pursuant to Federal Rule 12(b)(2) to dismiss both third-party complaints for lack of personal jurisdiction.

Although the economic realities of the world have changed significantly since the Supreme Court's modem jurisdictional jurisprudence was announced, until the Supreme Court rules otherwise, this court is bound by those holdings. There is presently no statutory or constitutional basis to exercise personal jurisdiction over HL Corp.

## II. Facts

### A. Parties

Plaintiffs Timothy and Courtney Boyce are residents of New York. The defendants and their primary locations are:

- Defendant/Third–Party Plaintiff Velo BDBI Support Inc.: Texas
- Defendant/Third–Party Plaintiff Advanced Sports, Inc.: Pennsylvania
- Defendant/Third–Party Plaintiff Spratt Cycle Support, Inc.: Florida

- Defendant Windsor America Corp.: Delaware
- Third–Party Defendant Ideal Bike Corporation: Taiwan
- Third–Party Defendant Top Sport International Ltd.: Taiwan
- Third–Party Defendant/Movant HL Corp. (Shenzhen): China

HL Corp. is a Chinese corporation with its principle place of business in China. Hr'g Tr., Nov. 20, 2015 ("Hr'g Tr."), at 8:6–9. It manufactures and sells rehabilitation equipment, sports equipment, and bicycle parts. Its annual revenue is approximately $150 million. *Id.* at 24:19–22. Approximately one-third of this revenue comes from the sale of bicycle handle bars; HL Corp. is known as one of the world's leading manufacturers of this product. *Id.* at 18:22–25; 24:23–25:3. HL Corp.'s recent annual revenue from direct sales to the United States totaled $6,100; no sale was made to a consumer in New York. *Id.* at 26:3–14.

### B. The handle bar's path from manufacture to plaintiff

The bicycle handle bar at issue in this case was manufactured by HL Corp. in China. *Id.* at 8:3–6. HL Corp. sold the handle bar to Ideal Bike Corporation ("Ideal") in Taiwan. *Id.* at 8:11–21. It had no knowledge of where the bicycle handle bar went after delivering it to Ideal. *Id.* at 10:15–20.

Ideal received an order from Advanced Sports, Inc. ("Advanced Sports"), which placed the order on behalf of its customer, Spratt Cycle Support, Inc. ("Spratt"). The order identified the specifications of the handle bars it was buying and of other component parts. Ideal had the handle bars transferred, along with the other ordered bicycle parts, to an affiliated company in Taiwan. The affiliated company, which is not named in this action, partially assembled the bicycles and placed then in boxes with the handle bars. The handle bars were not attached to the partially-assembled bicycles. The boxes also contained an instruction manual that was written and then sent electronically by Advanced Sports to Ideal in Taiwan, where it was printed. The boxes containing the partially-assembled bicycles, handle bars, and instructions for assembly were then sent to Spratt in Florida. *Id.* at 8:22–11:7.

Advanced Sports was the importer of record and was responsible for paying applicable customs duties. *Id.* at 16:8–18:6. In 2010, Advanced Sports sold approximately 8,600 bicycles in New York. This number grew to 256,970 in 2015. 85,998 of the bicycles Advances Sports sold in New York in 2015 had handle bars which were manufactured by HL Corp. Letter from Alice Spitz, Dec. 4, 2015, ECF No. 141.

Spratt, which does business through the website *www.bikesdirect.com,* sent the box to plaintiff, who had ordered it from his computer in New York via Spratt's website. Spratt did not open the box it had received from Taiwan before it shipped the box to plaintiff in New York. Hr'g Tr. at 11:11–12:2.

Defendant/Third–Party Plaintiff Velo BDBI Support Inc. ("Velo") owns the *www.bikesdirect.com* website used by plaintiff, and is part of the same corporate group as Spratt. *Id.* at 14:2–25.

Plaintiff received the box in New York, where he assembled the bicycle. Following the directions provided in the box and a video on Spratt's website, plaintiff attached the handle bar to the bicycle using an Allen wrench placed in the box in Taiwan. *Id.* at 19:11–20:23; 22:8–24:23.

On July 9, 2012, approximately two years after receiving the bicycle, plaintiff Timothy Boyce was riding it on the Manhattan Bridge. 2d Amended Compl., June

26, 2015, ECF No. 97, at ¶ 68. Plaintiff alleges that the handle bar of the bike suddenly fractured and broke into two pieces, causing him to lose control and fall to the ground. *Id.* at ¶¶ 69–70. There had been no problem with the handle bar before this. No history has been developed of prior breaks of this kind in HL Corp.'s product.

## C. Procedural History

In December 2013, plaintiff and his wife commenced an action in New York Supreme Court, Kings County, against a group of defendants that plaintiff alleged were responsible for the design, manufacture, and selling of the bike. Notice of Removal, Feb. 24, 2014, ECF No. 1, at Ex. C. The complaint asserted claims for strict products liability, negligence, breach of warranty, and loss of consortium. *Id.* On February 24, 2014, the case was removed to federal court by HL Corp. (USA). Notice of Removal, Feb. 24, 2014, ECF No. 1. HL Corp. (USA) was subsequently dismissed by the court for lack of personal jurisdiction. *Boyce v. Cycle Spectrum, Inc.,* 303 F.R.D. 182, 186 (E.D.N.Y.2014).

On October 16, 2014, defendant Advanced Sports, Inc. ("Advanced Sports") filed a third-party complaint against Ideal, Top Sport International Ltd., and HL Corp. Third–Party Compl., Oct. 16, 2014, ECF No. 48. The complaint asserts a claim against HL Corp. for contribution and indemnification. *Id.* It alleges personal jurisdiction over HL Corp. as follows:

> This Court has personal jurisdiction over HL CORP. pursuant to CPLR Section 302(a) in that, if plaintiffs were injured in substantially the manner claimed by plaintiffs, then HL CORP. would have committed a tort outside of the State of New York, the plaintiffs' claims arises from that act, the tortious act caused an injury to

plaintiffs in the State of New York, HL CORP. expected or should have expected that its action would have consequences in the State of New York and HL CORP. derived substantial revenue from goods used in the State of New York and, in any event, derived substantial revenue from interstate and/or international commerce.

*Id.* at ¶ 17.

Co-defendants Velo and Spratt separately filed a third-party complaint on October 16, 2014. Third–Party Compl., Oct. 16, 2014, ECF No. 49. Their third-party complaint alleged similar claims for common law and contractual indemnification and contribution again HL Corp. *Id.* Velo's and Spratt's third-party complaint makes the following jurisdictional allegations:

> That at all times hereinafter mentioned, third-party defendant HL CORP (Shenzhen) was and is a foreign corporation duly authorized to conduct business in the State of New York.
>
> That at all times hereinafter mentioned, third-party defendant HL CORP (Shenzhen) was and is a domestic corporation duly incorporated under the laws of the State of New York.
>
> That at all times hereinafter mentioned, third-party defendant HL CORP (Shenzhen) was and is a partnership duly authorized to conduct business in the State of New York.

*Id.* at 10–12.

It appears that Advanced Sports, Velo and Spratt service the third-party complaints through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (generally known as the Hague Service Convention). *See* Letter regarding status

of third-party status, Mar. 19, 2015, ECF No. 82; Letter re updated status, Mar. 20, 2015, ECF No. 83. While it is unclear whether the third-party complaints have been properly served on HL Corp., the company does not challenge the effectiveness of service. Proper service is assumed for purposes of the present motion.

On May 20, 2015, HL Corp. moved to dismiss the two third-party complaints on the ground that it is not subject to personal jurisdiction in New York. Notice of HL Corp. (USA) [*sic*], Inc.'s FRCP 12(b)(2) Motion to Dismiss, May 20, 2015, ECF No. 85. It argues that it has no connections to New York that are sufficient to give rise to personal jurisdiction under either a general doing business or long-arm theory. *See* Mem. of Law in Support of Third–Party Def. HL Corp. (Shenzhen)'s FRCP 12(b)(2) Mot. to Dismiss, May 20, 2015, ECF No. 85-2.

## III. Law

### A. Pleading Burden

■ "On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the party asserting jurisdiction] bears the burden of showing that the court has jurisdiction over the [movant]." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003). "[T]he showing a plaintiff must make to defeat a [movant]'s claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir.2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)).

■ "Before discovery, a plaintiff may defeat such a motion with legally sufficient allegations of jurisdiction. Where the parties have conducted jurisdictional discovery but have not held an evidentiary hear-

ing, the plaintiff must allege facts that, if credited, would suffice to establish jurisdiction over the defendant." *Lyons v. Rienzi & Sons, Inc.*, No. 09–CV–4253, 2012 WL 1393020, at *2 (E.D.N.Y. Apr. 23, 2012) (quoting *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1025 (2d Cir.1997)). "[I]f the court holds an evidentiary hearing—in a manner similar to determining the issue at trial—the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." *Kowalski–Schmidt v. CLS Mortg., Inc.*, 981 F.Supp. 105, 108 (E.D.N.Y.1997) (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986)).

### B. Personal Jurisdiction

■ ■ "A district court must have a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir.2013), *cert. dismissed*, —— U.S. ——, 135 S.Ct. 42, 189 L.Ed.2d 893 (2014). "[T]he existence of such a statutory basis 'is determined by the law of the state in which the court is located.'" *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir.2013) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir.2010)). "There are two traditional foundations for personal jurisdiction in the forum state, New York: general and specific, the latter known as long-arm jurisdiction." *Boyce*, 303 F.R.D. at 184.

■ After determining that a statutory basis for personal jurisdiction exists, "the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997). This second decision has two components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *Id.* Where, as here, the assertion of personal jurisdiction is through a state long-arm statute, "the rel-

evant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 60 (2d Cir.2012) (citing *Chloe v. ex rel. Licci v. Lebanese Canadian Bank, SAL,* 616 F.3d 158, 164 (2d Cir. 2010)).

> The "minimum contacts" inquiry requires [the court] to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" ... The "reasonableness" inquiry requires [the court] to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."

*Id.*

### 1. New York General Jurisdiction

Pursuant to N.Y. C.P.L.R. § 301, general personal jurisdiction over a foreign corporate defendant exists if it is "doing business" in New York. *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 96 (2d Cir. 2000). "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, *but with a fair measure of permanence and continuity.*" *Id.* (internal citation and quotation marks omitted) (emphasis added).

> In assessing whether a corporation's business is conducted 'with a fair measure of permanence and continuity,' the following nondispositive factors among others are considered: '[1] the existence of an office in New York; [2] the solicitation of business in New York; [3] the presence of bank accounts or other property in New York; and [4] the presence of employees or agents in New York.

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC,* 960 F.Supp.2d 383, 391 (E.D.N.Y.2013) (quoting *Li v. Hock,* 371 Fed.Appx. 171, 174 (2d Cir.2010)). The Supreme Court has explained that for a corporate defendant, "the paradigm forum for the exercise of general jurisdiction is ... one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (2011).

### 2. New York Long–Arm Statute

With respect to specific or long-arm jurisdiction, New York law provides as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect

the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

### a) N.Y.C.P.L.R. § 302(a)(1)

In determining whether personal jurisdiction may be exercised under the first clause of section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.2007) (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 166, 850 N.E.2d 1140, 1142 (2006)).

Under the second clause of § 302(a)(1), personal jurisdiction may be exercised where a party contracts anywhere to provide goods or services in New York. "This provision captures cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789 (2d Cir.1999) (citing Report of the Law Revision Commission for 1979, Leg. Doc. No. 65, 1979 N.Y. Laws A–31, A–59 (McKinney's)). "Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in the state." *Id.* The contract must be to send goods specifically into New York; "mere knowledge that [goods] were likely to end up in New

York is insufficient." Korn & Miller, et al., New York Civil Practice: CPLR ¶ 302.10 (David L. Ferstendig ed., Lexis-Nexis Matthew Bender 2d Ed.) ("N.Y.Civ. Prac."); *see also Great N. Ins. Co. ex rel. Felix Schoeller Tech. Papers v. Constab Polymer–Chemie GmbH & Co.*, 75 Fed. Appx. 824, 826 (2d Cir.2003) (prima facie case of jurisdiction under subsection made out where there was a contract providing specifically for the shipment of the allegedly defective product into New York); 16 N.Y. Prac., New York Law of Torts § 18:8 ("this provision was intended to allow New York to take full advantage of its power to exercise jurisdiction over nonresidents, in particular, those who contracted to ship goods into the state"); David D. Siegel, N.Y. Prac. § 86A (5th ed.2011).

### b) N.Y. C.P.L.R. § 302(a)(2)

"CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp.*, 126 F.3d at 28. "The tortious act need not have been committed on plaintiff; the statute only requires that it was committed in New York and that the plaintiff was injured thereby. N.Y. Civ. Prac. at ¶ 302.11.

### c) N.Y. C.P.L.R. § 302(a)(3)

"[I]n 1966 the New York Legislature enacted sub-paragraph (a)(3), which provides in pertinent part that New York courts may exercise jurisdiction over a non-domiciliary who commits a tortious act without the state, causing injury to person or property within the state." *Bensusan Rest. Corp.*, 126 F.3d at 29; *see also* N.Y. Civ. Prac. at ¶ 302.12 (§ 302(a)(3) was enacted in response to the New York Court of Appeals' decision that § 302(a)(2) "did not encompass products liability actions where the plaintiff was injured in New York by a product manufactured outside New York"). To ensure that this part of

the long-arm does not reach too far, it requires that one of two additional conditions is met.

The first condition is that the party "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." N.Y. C.P.L.R. § 302(a)(3)(i). There does not need to be any nexus between the additional New York state contacts required by this condition and the cause of action being sued upon. N.Y. Civ. Prac. at ¶ 302.13. The additional activities "must be persistent." *Id.* The "substantial revenue" option may be met either through "a substantial sum of money or a substantial percentage of the defendant's revenue." *Id.*

The second alternative condition requires that the defendant (i) should reasonably have expected the out-of-state act to have consequences in New York and (ii) derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3)(ii). This condition "focuses on the placement of products or services within interstate or international commerce, resulting in substantial revenue, coupled with the reasonable foreseeability of New York consequences." N.Y. Civ. Prac. at ¶ 302.14. The reasonable foreseeability requirement "is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere. *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 215, 735 N.E.2d 883, 886, 713 N.Y.S.2d 304 (2000) (quoting *Ingraham v. Carroll*, 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997)). It does not require that the defendant "foresee the specific event that produced the alleged injury. The defendant need only reasonably foresee that any defect in its product

would have direct consequences within the State." *Id.* (citing 12th Ann. Report of N.Y. Jud. Conf., at 343–44). "[O]ccasional sales into New York, or awareness of a possibility that a product will find its way into New York, is not sufficient to satisfy this element." N.Y. Civ. Prac. at ¶ 302.14.

### 3. Due Process

In addition to a statutory basis, the exercise of personal jurisdiction must also comport with due process.

> Due process protects the defendant's right not to be coerced except by lawful judicial power. As a general rule, the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'

*J. McIntyre Mach.*, 131 S.Ct. at 2785 (plurality op.) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances...." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir.2013), *cert. denied sub nom.*, *O'Neill v. Al Rajhi Bank*, —— U.S. ——, 134 S.Ct. 2870, 189 L.Ed.2d 848 (2014).

#### a) Minimum Contacts

"The concept of minimum contacts ... perform[s] two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Wood-*

*son,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Of particular significance on this point is the Supreme Court's recent decision in *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011), a products liability case similar to the instant one. In a plurality decision, the Supreme Court addressed the importance of respecting the minimum contacts requirement in a case brought against a foreign manufacturer of a product whose defect caused an injury in New Jersey. The Court examined the New Jersey Supreme Court's conclusion that although no minimum contacts between the foreign manufacturer and the state existed, personal jurisdiction could be exercised because of "significant policy reasons ... including the State's strong interest in protecting its citizens from defective products." 131 S.Ct. at 2790–91 (citation omitted). Writing for a four Justice plurality, Justice Kennedy explained that "[t]hat interest is doubtless strong, but the Constitution commands restraint before discarding liberty in the name of expediency." *Id.* at 2791.

■ "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The court applies "a totality of the circumstances test" to "evaluate the quality and nature of the defendant's contacts with the forum state." *Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 169 (2d Cir.2015) (citation omitted).

■ "To establish the minimum contacts necessary to justify 'specific' jurisdiction, the claim must arise out of or relate to the defendant's contacts with the forum state ... such that defendant 'purposefully availed' itself of doing business

and could foresee being 'haled into court' in the state." *Tansey v. Cochlear Ltd.,* No. 13–CV–4628, 2014 WL 4829453, at *3 (E.D.N.Y. Sept. 26, 2014) (citations omitted) (in products liability case, finding that even though New York's longarm statute was satisfied, the due process clause did not permit the exercise of jurisdiction over foreign defendant that had no contacts with New York, had not purposefully availed itself of doing business in New York, and was not "at home" in New York). "The relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore,* —— U.S. ——, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014). The contacts must be "with the forum State itself ... the plaintiff cannot be the only link between the defendant and the forum. *Id.* at 1122–23 (explaining that "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State").

#### b) Reasonableness

■ In assessing whether an assertion of jurisdiction is reasonable,

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

■ *MacDermid, Inc. v. Deiter,* 702 F.3d 725, 730 (2d Cir.2012) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 173 (2d Cir.2010)). "Ultimately, the

exercise of personal jurisdiction is reasonable if it 'would comport with fair play and substantial justice.'" *Eades,* 799 F.3d at 169 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 170 (2d Cir.2013)).

## IV. Application of Law to Facts

The jurisdictional allegations in Velo's and Spratt's third-party complaint are insufficient. They may run afoul of Federal Rule of Civil Procedure 11(b)(3). The rule requires attorneys to conduct a reasonable inquiry into the facts and to only make factual allegations that "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The three paragraphs containing jurisdictional allegations are contradictory and demonstrate that rather than perform the required investigation, counsel included a variety of speculative allegations designed to cover any possible situation that would yield his desired result. The court prefers to proceed with the merits of the case, ignoring the possible procedural error. *See* Fed.R.Civ.P. 1.

The parties have had the opportunity to engage in jurisdictional discovery. An evidentiary hearing by the court on jurisdiction has been held. Advanced Sports, Velo and Spratt have the burden of showing by a preponderance of the evidence that HL Corp. is subject to personal jurisdiction in New York. The evidence before the court is sufficient to decide the present motion. No relevant contrary evidence is likely to be available.

The three third-party plaintiffs have asserted that their discovery was limited by a Chinese law which forbids taking deposition testimony, and by incomplete responses to interrogatories from HL Corp. Even if the three third-party plaintiffs were frustrated in jurisdictional discovery, they are still required to demonstrate a factual basis for finding personal jurisdiction. They cannot do so.

## A. General Jurisdiction

 The evidence submitted indicates that HL Corp. is neither a New York corporation, nor is it authorized to do business in New York. Deck of Xiang Tan in Supp. of Third–Party Def. HL Corp. (Shenzhen)'s Mot. to Dismiss, May 20, 2015, ECF No. 85–5 (stating that HL Corp. is a Chinese corporation that is not registered to do business in New York); Hr'g Tr. 27:8–15. The court takes judicial notice of the records of the New York Secretary of State. *See Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir.2012) (court can take "judicial notice of relevant matters of public record"). A search of the records of the Secretary of State's Division of Corporations reveals no records for HL Corp. as either a domestic company or a foreign company authorized to do business in New York.

HL Corp. is not subject to general jurisdiction in New York.

## B. Specific Jurisdiction
### 1. C.P.L.R. § 302(a)(1)

 N.Y. C.P.L.R. § 302(a)(1) provides for jurisdiction over an entity that "transacts any business within the state or contracts anywhere to supply goods or services in the state." HL Corp. does not send handle bars into or sell handle bars in New York, nor does it have any contracts to supply handle bars to New York.

It is argued that the activities of HL Corp.'s purported "arm" or "subsidiary" in North America—HL Corp. (USA)—subject HL Corp. to jurisdiction. Defs. Velo BDBI Support, Inc. & Spratt Cycle Support, Inc.'s Mem. of Law in Opp'n to HL Corp (Shenzhen)'s Mot. to Dismiss Based

on Lack of Personal Jurisdiction, July 24, 2015, ECF No. 112 ("Velo & Spratt Mem."), at 4–5. According to HL Corp. (USA)'s responses to plaintiff's first set of interrogatories, it sold medical equipment to one company in New York. Anthony Bianchi Aff. in Opp'n, July 24, 2015, ECF No. 111, at Ex. E, at Interrogatory 9. The interrogatory response does not indicate when these sales were made, how many items were sold, or what amount of revenue was derived from the sales. Notwithstanding the lack of detail in the response, there are several reasons why HL Corp. (USA)'s sale of medical equipment cannot serve as a basis for jurisdiction over HL Corp.

First, the evidence does not support the conclusion that HL Corp. (USA) and HL Corp. are the same company, as third-party plaintiffs impute. *See* Velo & Spratt Mem. at 4. Rather, the evidence indicates that the companies are separate corporate entities. Anthony Bianchi Aff. in Opp'n, July 24, 2015, ECF No. 111, at Ex. B, at Interrogatory 14 (stating that the two companies are "separate and distinct corporate entities with different locations, operations and purposes"); *id.* at Ex. D, at 10:20–23 (testimony that HL Corp. (USA) is an "affiliate" of HL Corp.); *id.* at Ex. E, at Interrogatory 14 (stating that the relationship between the two companies is one of buyer and seller). No showing of *alter ego* has been made which would permit the piercing of each company's corporate veil.

Second, the court already has found that HL Corp. (USA) is not subject to personal jurisdiction in New York. *Boyce*, 303 F.R.D. at 186. Even if the activities of HL Corp. (USA) could be imputed to HL Corp. for purposes of the jurisdictional analysis, the court has held that such activities are insufficient to sustain personal jurisdiction. If the activities of HL Corp. (USA) are insufficient to subject itself to

jurisdiction, then they cannot be sufficient to subject HL Corp. to jurisdiction.

Third, the claim at issue in this case does not arise from or relate to HL Corp. (USA)'s sale of medical equipment. In order to satisfy 302(a)(1)'s requirements, the activity involving New York must relate to the claim at issue in the lawsuit. *Best Van Lines*, 490 F.3d at 246.

Fourth, for purposes of this motion, one sale of medical equipment is *de minimus*.

It is argued that HL Corp.'s website constitutes the transacting of business within New York. Under New York law, the ability of a website to confer personal jurisdiction on a foreign party depends on how interactive the website is.

> "Passive websites," which do not confer jurisdiction, primarily make information available to viewers but do not permit an exchange of information . . . At the other end of the spectrum are cases in which the defendant clearly does business over the Internet, such as where it repeatedly transmits computer files to customers in other states. . . . "Interactive" websites, permitting the exchange of information between the defendant and website viewers, occupy the middle ground and generally confer jurisdiction. . . .

▪ *Levans v. Delta Airlines, Inc.*, 988 F.Supp.2d 330, 335 (E.D.N.Y.2013)(citations omitted). "Generally, a website that only provides information about services for sale and contact information for the seller, without any ability to directly purchase the services through the website, is considered 'passive,'" and therefore insufficient to confer jurisdiction. *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F.Supp.2d 557, 568 (E.D.N.Y. 2011).

Advanced Sports asserts that the HL Corp. website "allows a customer to purchase a handlebar under its brand name Zoom." Velo & Spratt Mem. at 4. It further describes the website as an "interactive" website. Defs.' Suppl. Mem. in Opp'n to Mot. to Dismiss, Oct. 30, 2015, ECF No. 132, at 1–3. Both the description of the features of the website by Advanced Sports as well as the screenshots of the website submitted by Advanced Sports belies its assertion. The website is not interactive. Customers cannot purchase items directly through the website, or communicate directly with the company through a live chat feature. The website only lists the company's products and has contact information for HL Corp. *See* Anthony Bianchi Aff. in Opp'n, July 24, 2015, ECF No. 111, at Ex. C; Hr'g Tr. at 25:9–23.

HL Corp.'s website is passive and is insufficient to confer jurisdiction under N.Y. C.P.L.R. § 302(a)(1).

### 2. C.P.L.R. § 302(a)(2)

N.Y. C.P.L.R. § 302(a)(2) provides for jurisdiction over a defendant that "commits a tortious act within the state." There is no allegation that HL Corp. committed a tortious act in New York. This subsection does not serve as a basis for jurisdiction.

### 3. C.P.L.R. § 302(a)(3)

C.P.L.R. § 302(a)(3) requires showing that HL Corp. committed a tort outside of New York which caused plaintiff's injuries inside New York, and that either (i) HL Corp. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York, or (ii) HL Corp. expected or should have expected that its action would have consequences in New York, and that HL Corp. derives substantial revenue from interstate or international commerce. C.P.L.R. § 302(a)(3).

The parties do not address the initial requirements concerning the commission of a tort outside of New York. For purposes of this motion, the court credits the well-pled allegations of the third-party complaints that such a tort was committed.

With respect to the first additional condition (302(a)(3)(i)), the evidence indicates that HL Corp. does not engage in any regular business in New York. The evidence shows that HL Corp. does not receive any substantial revenue from goods used in New York. With respect to the second additional condition (302(a)(3)(ii)), HL Corp. at best had a general awareness that its products might end up in New York, a large market for bicycles. Such a generalized awareness is insufficient to satisfy the statute. N.Y. Civ. Prac. at ¶ 302.14.

C.P.L.R. § 302(a)(3) cannot serve as a basis for jurisdiction.

## V. Due Process

Because there is no statutory basis under New York law for exercising personal jurisdiction over HL Corp., it is unnecessary to decide whether the exercise of jurisdiction would comport with due process. In any event, due process would be violated were the court to exercise personal jurisdiction over HL Corp. in this case.

## VI. Conclusion

There is no statutory basis for subjecting HL Corp. to the jurisdiction of this court in this case. Although it seems unfair that a company that exploits the United States' marketplace generally at the national level should be effectively immune from suit in this country for injuries caused by its products, the Supreme Court's present view does not permit the

exercise of personal jurisdiction over a foreign company absent a more direct and intentional connection to the forum. While this requirement is not be consistent with the way in which the modem global economy operates, this court is bound to follow the Supreme Court. The matter should perhaps be taken care of in a treaty or standard contract provision. *See supra* Part I.

HL Corp.'s motion to dismiss is granted. The Clerk of the Court is directed to enter judgment in its favor.

SO ORDERED.